SHIELDS v. MONGOLLON EXPLORATION CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 8, 1905.)

No. 977.

**1. CIRCUIT COURT OF APPEALS—JURISDICTION—STATUTES—DISTRICT COURTS OF ALASKA.**

The appellate jurisdiction of the Circuit Court of Appeals for the Ninth Circuit over appeals and writs of error from the District Courts of Alaska is not ruled by Act Cong. April 7, 1874 (18 Stat. pt. 3, p. 27, c. 80), relating to appeals from judgments and decrees of territorial courts, but by the Alaska Civil Code (31 Stat. 414, c. 51), authorizing such appeals.

**2. SAME—MODE OF REVIEW—APPEAL OR ERROR.**

Under Civ. Code Alaska (31 Stat. 414, c. 51), § 504, conferring on the Ninth Circuit Court of Appeals the same jurisdiction to review by writs of error or appeal final judgments or orders of the District Courts of Alaska that was given by the act creating the Circuit Courts of Appeals to review final decisions of District and Circuit Courts, and section 508, declaring that all provisions of law now in force regulating the procedure and practice in cases brought by appeal or writ of error to the Supreme Court of the United States or to the United States Circuit Court of Appeals for the Ninth Circuit, except in so far as the same may be inconsistent with any provisions of the act, shall regulate the procedure and practice in cases brought to such courts respectively from the District Courts for the District of Alaska, the Ninth Circuit Court of Appeals had jurisdiction to review a decree in an action to recover an interest in a mining claim tried to the court by writ of error.

**3. SAME—WAIVER OF JURY—NECESSITY OF WRITING.**

Under the Alaska Civil Code (31 Stat. 363, c. 19), providing that a trial by jury may be waived by the parties to an issue of fact by written consent and by oral consent in open court entered on the minutes, where it appeared both in the bill of exceptions and in the judgment that a jury was waived by stipulation of the parties in open court, the Circuit Court of Appeals was not precluded from reviewing assignments of error relating to the admission or exclusion of evidence, because the waiver was not in writing and filed as provided by Rev. St. U. S. §§ 649, 700 [U. S. Comp. St. 1901, pp. 525, 570].

**4. SAME—EVIDENCE.**

Where, in an action to recover an interest in a mining claim, defendants claimed that such interest was conveyed to plaintiff's prior grantor by mistake as a part of the settlement, it was not error to permit one of the defendants with whom such settlement was made to testify what plaintiff's prior grantor did pursuant to the agreement of settlement offered in evidence.

**5. SAME—PREJUDICE.**

Where, in an action to recover an interest in a mining claim, defendants contended that such interest had been included in a settlement deed to plaintiff's prior grantor by mistake, and plaintiff had the benefit of

such grantor's uncontradicted testimony that it was agreed that the property in controversy should be transferred as a part of the settlement, plaintiff was not prejudiced by the court's refusal to permit one of the defendants who made such settlement to testify whether such proposition had not been made.

6. SAME—PLEADING.

In an action to recover an interest in a mining claim conveyed to plaintiff's prior grantor as a part of a settlement between him and K., acting for a corporation, defendants claimed that such interest was conveyed to plaintiff's grantor by mutual mistake, and K., who was a party, answered, and alleged that a settlement was made between the corporation and plaintiff's grantor, and was intended only to affect property in which those parties were interested, and not the interest in question, which belonged to K. individually, and that K. executed a deed without any negligence, believing that it conformed to the agreement, and did not contain the interest in controversy, and prayed a reformation of the deed. *Held*, that such answer was not objectionable, as not constituting a defense or furnishing ground for reformation of the deed, on the theory that, if K. acted only for the corporation, the deed did not convey his individual property.

7. SAME—EJECTMENT—EQUITABLE DEFENSES—FINDINGS—REVIEW.

Under Alaska Code (31 Stat. 393, c. 38), making certain provisions for the trial of actions of an equitable nature, and providing that the section shall not be construed to bar an equitable owner in possession of real property from defending his possession by means of his equitable title, where defendants pleaded an equitable title to an interest in a mining claim sought to be recovered in ejectment, and prayed reformation of a deed to plaintiff's prior grantor for mutual mistake, the trial court's findings of fact on a jury being waived did not have the conclusive effect on appeal of a verdict of a jury.

8. SAME—FINDINGS OF FACT—CONFLICTING EVIDENCE—REVIEW.

Where an action of ejectment, in which an equitable defense was raised, was tried by the court without a jury, the court's findings of fact, made on conflicting evidence, could not be reviewed on appeal, unless a serious and important mistake appeared to have been made in consideration of the evidence or in the application of the law.

9. SAME—INNOCENT PURCHASER.

In an action to recover an interest in a mining claim, evidence *held* insufficient to show that plaintiff was an innocent purchaser, without notice of defendants' equity.

10. SAME—DEEDS—MUTUAL MISTAKE—EXECUTION—FAILURE TO READ.

Where, in executing a deed in pursuance of a settlement, the grantor relied on the representation of his attorney, who informed him that the deed was "all right, and according to a memorandum" which the grantor had furnished, he was not guilty of such negligence, in failing to read the deed, as precluded a subsequent reformation thereof, so as to exclude an interest in a certain mining claim included by mutual mistake.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

On August 26, 1899, the J. S. Kimball Company, a corporation, entered into a written contract at San Francisco, Cal., with Conrad Siem, by which it employed him as its agent to take charge of its store and trading station at Nome, Alaska, to manage its business at Nome and elsewhere as might be agreed upon, and to pay him for his services as such agent and for services theretofore rendered by him an amount equal to one-third of the net profits of the business of said store and trading station from the time of its establishment to the termination of said contract, and it was stipulated that the contract might be terminated by the mutual agreement of both parties or upon written notice of its termination by either thereof. In pursuance of said contract the said agent took possession of the store and business of said cor-

poration. at Nome, and remained there in charge thereof during the winter of 1899 and until the spring of 1900, when the corporation terminated the agency, and directed said agent to turn over to the Kimball Steamship Company all of its property covered by the agreement in his possession or under his control. In the latter part of June, 1900, the J. S. Kimball Company took forcible possession of its store and business, and ejected said agent therefrom. About July 28, 1900, J. S. Kimball arrived in Nome, and commenced negotiations to close up the business between the corporation and Siem. The negotiations which were carried on between Siem and J. S. Kimball representing the corporation resulted in the execution on August 27, 1900, of the deed to Siem under which the plaintiff in error claims an interest in the property in controversy, namely, an undivided one-fourth interest in and to a placer mining claim known as "Bench Claim No. 1 Below Snow Gulch, First Tier on the Northwest Side of Glacier Creek in Cape Nome Recording District, Alaska." On August 29, 1899, J. D. Morgan, then the owner of said claim, conveyed unto John S. Kimball and John H. Bullock an undivided one-half thereof. On March 12, 1900, Kimball conveyed to Brander an undivided one-twelfth interest therein, and on July 14, 1900, he conveyed to Tyson an undivided one-eighteenth; so that on August 27, 1900, the date of the deed under which the plaintiff in error claims to have received an undivided one-fourth interest therein, Kimball was the owner of only an undivided one-ninth interest. The plaintiff in error, in her amended complaint, predicated her right to recover an undivided one-fourth interest on the theory that the conveyance from Morgan to Kimball and Bullock conveyed to Kimball individually, and for his own use and benefit, an undivided one-fourth interest, and that by the terms of the settlement between the J. S. Kimball Company and Siem all the interest of J. S. Kimball in the claim in controversy was to be conveyed to the latter. The defendants in error defended on the ground that the interest of J. S. Kimball in the claim in controversy was his individual property, acquired by purchase, and was not considered in the settlement between the J. S. Kimball Company and Siem, and was not intended to be conveyed to the latter under said settlement, but that the conveyance thereof was the result of a mutual mistake between the parties to the said settlement. The action was tried before the court without a jury. The court made findings of fact, which are in substance as follows: First. That on August 29, 1899, J. D. Morgan, being the owner of the mining claim in controversy, conveyed to John H. Bullock and John S. Kimball an undivided one-half interest in that and other mining claims, and that the grantees in said deed thereby became the owners each of an undivided one-fourth interest therein. Second. That on February 28, 1900, Kimball conveyed to A. J. Brander an undivided one-twelfth interest in said claim, and on July 14, 1900, conveyed an undivided one-eighteenth interest therein to Robert J. Tyson, and said grantees entered into possession of said claim; that on August 27, 1900, there was vested in John S. Kimball an undivided one-ninth interest in said claim, and no more. Third. That during the continuance of the agency of Conrad Siem for the J. S. Kimball Company from August 26, 1899, to July, 1900, the said agent caused to be entered and located by various persons, through and by means of his connection with such corporation, a large number of mining claims in sundry mining districts in Alaska for said corporation, and caused some thereof to be located under his own name, others in the name of said corporation, and others in the name of J. S. Kimball, who was the president of said corporation, but all of said claims were located for the benefit of said corporation, and were held by it subject to the agreement between it and its said agent. Fourth. That on or about August 27, 1900, it was agreed between the said J. S. Kimball Company, through its said president and said Conrad Siem, that in full settlement of the accounts between said corporation and Siem the latter should take and receive, and the former should transfer and convey by quitclaim deed to him, all the mining claims of every nature and kind then owned by the said J. S. Kimball Company and Siem or either thereof, or located by any person for them or either of them, or then of record in their names or the name of either of them, save and excepting therefrom certain mining claims thereafter in the findings described. Then follows the description of numerous mining claims so reserved, one of which is the right, title,

and interest of J. S. Kimball in the claim in controversy in this suit. Fifth. That after said settlement had been made the attorney for the J. S. Kimball Company and the attorney for Conrad Siem prepared a deed of conveyance, and presented the same to said corporation and to said Siem, and said attorneys represented that the said deed was prepared in conformity to and in accordance with the terms of said agreement and settlement. On August 27, 1900, said J. S. Kimball and the J. S. Kimball Company and Conrad Siem, each relying on the statements so made by said attorneys, accepted said instrument, and thereupon the said corporation, by its attorney in fact and the said J. S. Kimball, executed and delivered to Conrad Siem the deed bearing date August 27, 1900, wherein and whereby there was conveyed to the said Siem all the mining claims and parts of mining claims of every kind whatsoever now owned by the party of the first part or either of them, or located by any person for them or either of them, or now of record in the name of them or either of them, or to which they or either of them is entitled by virtue of any contract made with any person, etc., saving and excepting therefrom claims which were therein thereafter described; that by mutual mistake of the parties there was omitted from the exceptions which were intended to have been inserted in said deed the premises in controversy in this suit and certain other mining claims not necessary here to specify, all of which were acquired by purchase by J. S. Kimball as his individual property, and in none of which said Siem had any interest. Sixth. That said J. S. Kimball executed said deed for the sole purpose of executing in accordance with said agreement of settlement the conveyances that were thereby agreed to be made to said Conrad Siem, and that he relied upon the statements and assurances of his attorney and the attorney of Conrad Siem that the same contained all the reservations and exceptions which had been agreed upon; that at the time of the execution of said deed the J. S. Kimball Company and said Conrad Siem had no right, title, or interest of any kind or nature in the said mining claims mentioned in said reservations and exceptions which were so omitted from said deed, but said J. S. Kimball was the owner of and entitled to an undivided one-ninth interest in the claim in controversy, and no more; that on April 19, 1901, Conrad Siem conveyed all his right, title, and interest in all properties in the District of Alaska to the Behring Sea Improvement & Trading Company, and on August 31, 1901, the said last-named corporation conveyed the same to the plaintiff in error; that on April 19, 1901, the time of making his said conveyance, Conrad Siem had full knowledge and notice of the mistake in said deed of August 27, 1900; that on said date he was the president and attorney in fact of said Behring Sea Improvement & Trading Company, and the principal and only beneficiary stockholder therein, and that said corporation had full knowledge and notice of said mistake, and of the equitable rights of the defendants in error. Seventh. That the plaintiff in error is the wife of H. E. Shields, who, at the time of the settlement so had on August 27, 1900, was the attorney and adviser of Conrad Siem, and he and the plaintiff in error had full, complete, and actual knowledge of said mistake in said deed and of the equitable rights and interests of the defendants in error in said mining claim long prior to the date of the conveyance thereafter made, and knew that the defendants in error were in possession of said mining claim as tenants in common, and holding the whole of same according to their respective interests. Eighth. That prior to the making of the deed to the plaintiff in error, Conrad Siem, as attorney in fact for said Behring Sea Improvement & Trading Company, and in his own proper person, was requested to reconvey or cause to be reconveyed the said mining claims so conveyed to him by mutual mistake on August 27, 1900, or to correct said mistake, but he refused to comply therewith; that the plaintiff in error has not, nor has ever had, any title or interest in the said mining claim in controversy, but that Helen W. Kimball is, and has been since March, 1901, the owner of an undivided $27/72$ thereof, and the defendant John S. Kimball is the owner of an undivided $9/72$ thereof; that John H. Bullock is the owner of an undivided $8/72$ thereof, and the Mongollon Exploration Company is the owner of an undivided $28/72$ thereof; that said deed of August 27, 1900, and the subsequent conveyance of Conrad Siem to the Behring Sea Improvement & Trading Company constitute a cloud upon the title of the defendants in

error; and that the amended answer of said defendants in error is in all respects true, and that the reply of the plaintiff in error is untrue. The court thereupon made conclusions of law in accordance with said findings of fact, and entered a judgment in favor of the defendants in error.

Bishop, Wheeler & Hoefler and H. E. Shields (J. F. Bowie, of counsel), for plaintiff in error.

James E. Fenton, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

We are met at the threshold of this case by the motion of the defendants in error to dismiss the writ of error on the ground that the appellate jurisdiction of this court can be invoked in the present case only by an appeal. The motion is based upon the act of Congress governing the practice in territorial courts and appeals therefrom, approved April 7, 1874 (18 Stat. pt. 3, p. 27, c. 80), which provides that the judgments and decrees of territorial courts in actions at law wherein there is not a trial by jury, and wherein the issues of law and fact are submitted to and tried by the court without the intervention of a jury, can be reviewed only by appeal, and not on writ of error. The Supreme Court, in Stringfellow v. Cain, 99 U. S. 610, 25 L. Ed. 421, Hecht v. Boughton, 105 U. S. 235, 26 L. Ed. 1018, Bonnifield v. Price, 154 U. S. 672, 14 Sup. Ct. 1194, 26 L. Ed. 1022, and in several other decisions, has held that by virtue of this statute the appellate jurisdiction of the Supreme Court over the judgment or the decree rendered by a territorial court in a case not tried by a jury can only be exercised by appeal, and dismissed cases of that nature which had been brought before it on writs of error. But the appellate jurisdiction of this court over appeals and writs of error from the District Courts of Alaska is not ruled by the act of April 7, 1874, but by chapter 51 of the act of June 6, 1900, providing a Civil Code for Alaska (31 Stat. 414). Section 504 of that chapter gives to this court the same jurisdiction to review by writ of error or appeal final judgments and orders of the District Courts of Alaska that was given by the act creating the Circuit Courts of Appeals to review final decisions of District and Circuit Courts; and section 508 provides that:

"All provisions of law now in force regulating the procedure and practice in cases brought by appeal or writ of error to the Supreme Court of the United States or to the United States Circuit Court of Appeals for the Ninth Circuit, except in so far as the same may be inconsistent with any provision of this act, shall regulate the procedure and practice in cases brought to the courts respectively from the District Court for the District of Alaska."

The motion to dismiss is therefore denied.

The defendants in error deny the power of this court to consider the assignments of error so far as they relate to the rulings of the trial court in admitting or excluding evidence, or to the alleged insufficiency of the evidence to support the findings of fact, on the ground that it does not appear from the record that written consent of the parties to waive a jury trial was filed in the court below.

They rely upon sections 649 and 700 of the Revised Statutes [U. S. Comp. St. 1901, pp. 525, 570], in which it is provided that issues of fact in civil cases in any Circuit Court may be tried and determined by the court without the intervention of a jury whenever the parties or their attorneys of record file with the clerk a stipulation in writing waiving a jury, and that when an issue of fact is so tried the rulings of the court in the progress of the trial, if excepted to and duly presented by a bill of exceptions, may be reviewed by the Supreme Court; and they cite the decisions of that court in County of Madison v. Warren, 106 U. S. 622, 2 Sup. Ct. 86, 27 L. Ed. 311, and Bond v. Dustin, 112 U. S. 604, 5 Sup. Ct. 296, 28 L. Ed. 835, and other cases thereafter decided, in which it has been held that while prior to the enactment of these sections of the statutes the appellate court had no authority to revise the rulings of a Circuit Court upon the admission or rejection of testimony, or upon any other question of law arising out of the evidence where the parties had waived a trial by jury and had submitted the facts to the determination of the Circuit Court upon the evidence, after the statute such power could be exercised only upon proof of the filing of the written waiver as required thereby. If this were the ordinary case of a writ of error to review the proceedings on a trial in a Circuit Court of a civil law case without the intervention of a jury, the objection now interposed would be well taken, for the record in this case fails to show that there was a written waiver of a jury trial. But the act of June 6, 1900, adopting a Civil Code for the trial of causes in Alaska (31 Stat. 363, c. 19), provides that trial by jury may be waived by the parties to an issue of fact not only by written consent, but by oral consent in open court entered in the minutes. It appears both in the bill of exceptions and in the judgment of the court below that a jury trial was expressly waived upon the stipulation of the respective parties. There can be no doubt, therefore, that such oral consent, thus evidenced by the record, is as effective to preserve the right of a plaintiff in error to review the rulings of the court below as would have been a written consent under the provisions of section 649 of the Revised Statutes.

The plaintiff in error contends that the court erred in overruling the objection to the question addressed to J. S. Kimball, a witness for defendants in error, when he was asked, "What did Conrad Siem do pursuant to the agreement that has been offered in evidence here, if you know?" The objection was that the evidence called for was incompetent, irrelevant, and immaterial. The court allowed the witness to give the details of the negotiations prior to the final agreement of settlement. We see no error in the ruling. It certainly was not such plain error as to require this court to take notice of it in the absence of an assignment, and it was not assigned as error.

Error is assigned to the ruling of the court in sustaining the objection of defendants in error to interrogatories propounded to said witness after he had testified that Geary was not acting as his attorney at the time of the settlement, when he was asked, on his

cross-examination, in substance the following questions: Did not T. J. Geary act as attorney for the J. S. Kimball Company, and did not you treat this property of the J. S. Kimball Company as your property? Did you not go, upon August 6th, to the office of Mr. Geary, and enter into that agreement with Conrad Siem in the presence of Mr. Shields? On or about August 20th, or on or about August 15th, did not you come to terms of settlement with Conrad Siem? The evidence called for by the first of these questions could not be material under the allegations of the amended complaint of the plaintiff in error. She alleged therein that on August 27, 1900, J. S. Kimball by his deed sold and conveyed unto Conrad Siem an undivided one-fourth interest in the mining claim in controversy. It was not the theory of the complaint or of the testimony of the plaintiff in error that J. S. Kimball held an interest in the claim in controversy in trust for the J. S. Kimball Company. It is true that in the complaint in intervention in the case of J. S. Kimball and John H. Bullock against Stewart and Richards the plaintiff in error so alleged, but her amended complaint in the case at bar must be regarded as a distinct abandonment of that theory. In addition to this, there is nothing to show that the interest of the plaintiff in error was prejudiced by the exclusion of the testimony so sought, nor by the exclusion of the testimony of the witness as to what agreements had been negotiated, but not consummated, on August 6th or on August 20th. The offers of proof of the plaintiff in error in connection with this rejected testimony were, in substance, that on August 6 and on August 20, 1900, J. S. Kimball and the J. S. Kimball Company and Conrad Siem reached terms of settlement, one of the features of which was that Kimball was to convey to Siem all the mining property in Alaska that had been located in or stood in the name of John S. Kimball or the J. S. Kimball Company. It is urged that this testimony so excluded was competent and was material, for the reason that it tended to contradict certain testimony given by J. S. Kimball on his direct examination. That testimony was that three certain named claims, including the claim in controversy, were his own individual speculation, and that in the final agreement none of them was to be conveyed to Siem, either by himself or by the J. S. Kimball Company, and that the company never had any interest in either of them. Then followed the question:

"At the time you signed this deed, you may state whether or not you had any knowledge whatever of it describing or omitting therefrom the mining claim in controversy known as 'Bench Claim No. 1 Below Snow Gulch, first tier'? A. I never had dreamed of any such thing as that being in there."

Counsel for plaintiff in error argue that this answer of J. S. Kimball is a denial that at any time he had entertained the idea of, or discussed, a transfer of the claim in controversy in the settlement with Siem. We do not so understand it. To us it seems clear that the witness meant to say that in the final settlement he had never entertained the thought of transferring to Siem the claim in controversy. If such was the true meaning of his answer, the prof-

fered evidence did not tend to contradict it, and there was no error in its exclusion. But if, indeed, there was error, it became harmless, for the reason that thereafter Siem testified' as to the terms of the proposed settlement of August 6th and August 20th, and his testimony was not contradicted by any witness. The proposed settlement of August 6th is evidenced in the record by the prepared instrument of agreement which was to have been signed on that date. It contains no suggestion that Kimball was to transfer his interest in all claims in Alaska then standing in his name. On the contrary, the list of claims which was attached thereto omits any mention of the claim in controversy. Of the proposed settlement of August 20th Siem testified that the proposition of Kimball was to convey to him "all the mining property then owned by J. S. Kimball and the Kimball Company in Alaska, if I gave him a mortgage for $20,000." It may be doubted whether the true construction of this proposition, in view of the surrounding circumstances, was that property was to be included in the proposed transfer other than that in which both of the contracting parties were jointly interested. But if, indeed, such was the meaning of the proposition, the plaintiff in error had the benefit of Siem's uncontradicted testimony that such a proposition had been made, and it is not reversible error that she was not permitted to inquire of Kimball whether that proposition had not been made.

It is contended that the trial court erred in overruling the objection of the plaintiff in error to the second affirmative defense of the amended answer. The objection was made on the trial on the ground that the matter so pleaded did not constitute a defense or furnish ground for the reformation of the deed. No objection was interposed on the ground that the relief thereby sought could not properly be obtained in an answer to an action of ejectment. It is urged that the affirmative matter so pleaded afforded no ground for reforming the deed, because it states that the agreement which culminated in the settlement of August 27th was made between the J. S. Kimball Company and Conrad Siem, and that in the execution thereof the attorneys who prepared the deed represented to the parties thereto that it was prepared in accordance with the contract, and that the J. S. Kimball Company (not J. S. Kimball) and Conrad Siem intended at the time of its execution to make exceptions of certain properties from the deed—properties which belonged not to the Kimball Company, but to J. S. Kimball—and that the exceptions so intended to be made were not in fact made. It is argued that on these allegations it does not appear that the deed in question at law conveyed the land in dispute, since it operated only on' the interest of the Kimball Company, which company, according to the answer, had no interest in the claim in controversy herein; and that, since the answer further alleges that the only description in the deed of property on which it was to operate was that of the property of the J. S. Kimball Company, the mistake, so far as that company is concerned, is immaterial, and equity will not interfere to correct it; and that as to J. S. Kimball, he was not, according to the terms of the alleged contract, a party to the agreement of

settlement, and the descriptive part of the conveyance, if it followed the contract, would not convey away any of his private property. We think that this contention ignores some of the allegations of that portion of the answer which was objected to. One of the parties who made the answer was John S. Kimball. The prayer of the answer was for the correction of the deed on the ground of mutual mistake. It is true that in the portion of the answer which is objected to it is alleged that the settlement was made between the J. S. Kimball Company and Conrad Siem, and was intended to affect property in which those parties had an interest; but it is alleged further that the attorney for the respective parties to the settlement represented not only to those parties, but to J. S. Kimball, that the deed was drawn in conformity to and in accordance with the agreement, and that J. S. Kimball, as well as the others, relied upon such statements, and that he, as well as the others, without fault or negligence, executed the same; and the answer then proceeds to set forth what he and they all supposed to be contained in the conveyance, specifies the error in the deed, and alleges that from the deed executed by the company and Kimball to Conrad Siem reservations were omitted, by mutual mistake, of property belonging to Kimball individually. Kimball, having executed the deed in his individual capacity, and having executed the same by mistake, was shown by the allegations of this answer, if they were true, to be entitled to the relief which was prayed for.

The plaintiff in error contends that the findings of fact of the trial court are not supported by the evidence. The defendants in error contend that the findings, having been made under a waiver of a jury trial, have the same conclusive effect as a verdict of a jury, and must stand, unless it appear that there was no evidence whatever to sustain them; citing Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457, and McKinley Creek Min. Co. v. Alaska Min. Co., 183 U. S. 563, 22 Sup. Ct. 84, 46 L. Ed. 331. This leads us to inquire whether the findings which are here for review are findings of a court of equity or of a court of law. Under the system which prevails in the Circuit Courts of the United States, if a defendant, after being brought into a court of law to answer the plaintiff's complaint, discovers that his defense lies in a reformation of his written contract or deed, his remedy is to file a bill in equity praying for such reformation, and for an injunction against the prosecution of the law action until a decision of the suit in equity. The Alaskan Code (31 Stat. 393, c. 38), making certain provisions for actions of an equitable nature, contains the proviso: "This section shall not be construed so as to bar an equitable owner in possession of real property from defending his possession by means of his equitable title." This provision was adopted from the laws of Oregon (B. & C. Comp. § 392), after it had been held in that state that the equitable defense so allowed to be pleaded could be used only for the purpose of defending possession, and not for the purpose of obtaining affirmative relief. Spaur v. McBee, 19 Or. 76, 23 Pac. 818. But the plaintiff in error does not, and did not in the court below, question the power of the trial court to deal with the

equitable defense which was interposed in the present case, nor its power to proceed and decree the affirmative relief which was accorded in ordering the reformation of the deed. Of course, the uniting of law and equity in one suit, as thus sanctioned by the Code of Alaska, does not have the effect to confuse the two, but requires that, while both branches of the case are to be tried in one court, the issues in equity must be tried by the judge as a chancellor, and the issues in law must be tried by the same judge with a jury, unless a jury trial be waived. The conclusion is that the findings of fact in the present case having all been made upon the issues presented by the equitable defense, are not attended with the presumptions which apply to the findings of the court in a law case where a jury trial has been waived. We find in the evidence no ground for saying that the trial court disregarded the rule that in each case the burden rests upon the moving party of overcoming the strong presumption arising from the terms of a written instrument, and that, if the proofs are doubtful and unsatisfactory, and there is a failure to overcome the presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties. Nearly all of the testimony was taken in open court, and the judge who heard the case had the opportunity to observe the demeanor of the witnesses, and to judge concerning their credibility. There was testimony to the effect that Conrad Siem had, prior to the commencement of the suit, expressly admitted the mistake. Findings of fact so made on conflicting evidence cannot be reviewed by this court unless a serious and important mistake appears to have been made in the consideration of the evidence, or an obvious error has intervened in the application of the law. This rule is so firmly established by the decisions of this and other courts as to require no citation of authorities.

It is contended that the plaintiff in error is an innocent purchaser of an interest in the mining property in controversy, and is therefore entitled to prevail in the action. The plaintiff in error is the wife of H. E. Shields, who was the attorney for Siem in the negotiations leading up to the settlement and in the settlement effected on September 27, 1901. After obtaining the deed which was made at that date, Siem, on April 20, 1901, for an expressed consideration of $1, conveyed by deed of bargain and sale to the Behring Sea Improvement & Trading Company, a corporation of the state of California, all his right, title, and interest in any claim to property, real, personal, or mixed, of every kind or description, in the district of Alaska, which deed was recorded on July 24, 1901. On August 31, 1901, that corporation and Siem each executed to the plaintiff in error, by a deed of bargain and sale, for an expressed consideration of $500, all the right, title, and interest of the grantors in the mining claim in controversy. Those deeds were recorded on September 6, 1901. On April 2, 1901, J. S. Kimball and J. H. Bullock, as plaintiffs, commenced an action in the District Court of Alaska, Second Division, against A. G. Stewart and E. Richards and others, alleging in their complaint that the plaintiffs were the

owners of placer bench claim No. 1 on Glacier creek, being the same property that is in controversy in the present action; that on March 17, 1901, the defendants in said action had ousted the plaintiffs therefrom; and the plaintiffs demanded judgment for the restitution of said claim and for damages. In that action Siem, by leave of the court, intervened, and alleged that Morgan, the locator of said claim, on August 29, 1899, conveyed to J. S. Kimball and J. H. Bullock an undivided one-half interest in the same, that the conveyance was made to said grantees in trust for the use and benefit of the J. S. Kimball Company, that the latter, in September, 1900, conveyed to the intervener its undivided one-half interest in said property, in which conveyance J. S. Kimball joined, and that the defendants Stewart and Richards ousted and ejected the intervener from said claim. The intervener demanded judgment for the possession of the premises and for damages. That complaint was signed by Shields and Reid as attorneys, and on June 13, 1901, H. E. Shields made oath thereto. It is clear that Kimball and Bullock claimed to be the owners of the whole of the property in controversy. It was admitted in open court on the trial of the present case in the court below that H. E. Shields was the agent of the plaintiff in error in the matter of procuring the conveyances to her from Siem and from the Behring Sea Improvement & Trading Company, and that he transacted all of said business. It further appeared from the evidence that the plaintiff in error paid no money whatever either to Siem or to the Behring Sea Improvement & Trading Company as consideration for the conveyances, but that the $500 referred to in the deed as consideration represented attorneys' fees owing from Conrad Siem to H. E. Shields for services in connection with the settlement of August 27, 1900, and that it was in payment of said indebtedness that the conveyances were made. The plaintiff in error cannot, therefore, claim to be an innocent purchaser of an interest in the property in controversy. Nor can she claim to have succeeded to the right of an innocent purchaser, unless it can be shown that her grantor, the Behring Sea Improvement & Trading Company, was an innocent purchaser from Siem. It appeared from Siem's testimony that he owned nearly 51 per cent. of the stock of that corporation, and that 49 per cent. is treasury stock not yet issued. In other words, Siem held all the issued stock of the corporation excepting a few shares which evidently had been placed to qualify others to act as directors. In addition to this, it further appeared that he was the president of the corporation. The knowledge that he had of the transaction between him and Kimball must therefore be imputed to that corporation. The corporation therefore was not an innocent purchaser.

It is said that equity cannot relieve the defendants in error from the result of J. S. Kimball's negligence in failing to read the deed before he signed it. It is true that equity in certain cases refuses to relieve men from the consequences of their own carelessness, but there is no hard and fast rule that one who fails to read a deed before signing it may not seek its reformation in equity in a case where there has been a mutual mistake. In the present case there

was evidence tending to show that before signing the deed J. S. Kimball asked Mr. Geary, the attorney for the J. S. Kimball Company, if the deed was all right and according to the memorandum which he had furnished, and was answered in the affirmative. The question whether the failure to read a conveyance before its execution is fatal to the right to obtain its reformation must in each case depend upon the attending circumstances. In view of the evidence in this case and the general principles announced by the authorities, we cannot say that the court erred in holding the negligence excusable. West et al. v. Suda, 69 Conn. 60, 36 Atl. 1015; Barry v. Rownd (Iowa) 93 N. W. 67; Boulden v. Wood (Md.) 53 Atl. 911; Conn v. Hagan (Tex. Sup.) 55 S. W. 323.

We find no error for which the judgment should be reversed. It is accordingly affirmed.