## SKELTON v. FEDERAL SURETY CO.

(Circuit Court of Appeals, Eighth Circuit. November 1, 1926.)

No. 7246.

**1. Reformation of instruments ⊗⟳45(1).**

Mutual mistake, as foundation for reformation of instrument, must be established by clear, convincing, and satisfactory proof.

**2. Reformation of instruments ⊗⟳16.**

Equity will grant relief by way of reformation, whether mutual mistake in contract was one of law or of fact.

**3. Reformation of instruments ⊗⟳45(13).**

Evidence, being clear, convincing, and satisfactory relative to mutual mistake, in that indemnity bond omitted specific mention of statutory bond signed by surety, *held* sufficient to warrant reformation.

**4. Appeal and error ⊗⟳1022(3).**

Findings of fact by a special master on conflicting evidence, approved by trial court, are entitled to great weight by appellate court.

**5. Reformation of instruments ⊗⟳25.**

Negligence of surety company's agent in failing to include statutory bond in indemnity agreement *held* not to preclude reformation, in view of showing that indemnitor recognized liability.

**6. Reformation of instruments ⊗⟳25.**

Mere negligence, not amounting to violation of positive duty, does not prevent reformation, particularly where no prejudice results.

**7. Indemnity ⊗⟳9(1)—Indemnitor could not limit his liability to proportion that total contract price bore to total cost of work, where statutory bond given by surety contained no such limitation (Rev. St. Kan. 1923, 60—1403).**

Where statutory bond did not limit liability of surety, indemnitor could not limit recovery against him to proportion that total contract price bore to total cost of work, under Rev. St. Kan. 1923, 60—1403, limiting lien claimants to such proportion.

**8. Estoppel ⊗⟳81.**

Indemnitor, who requested surety to make payments under statutory bond without limiting request to payments in proportion that total contract price bore to total cost of work, *held* estopped to limit his liability to such pro rata payment.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by the Federal Surety Company against Charles W. Skelton. Decree for plaintiff, and defendant appeals. Affirmed.

C. M. Williams and D. C. Martindell, both of Hutchinson, Kan., for appellant.

David A. Murphy, of Kansas City, Mo. (John T. Harding and R. C. Tucker, both of Kansas City, Mo., and A. L. Noble, of Wichita, Kan., on the brief), for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. This is an appeal from a decree reforming a contract and enforcing the same as reformed. The contract was executed by appellant. By its terms he agreed to indemnify appellee for any loss which it might sustain in consequence of executing as surety a bond or bonds given by a contractor, Tullis, in connection with a building contract which he had with the trustees of the Zion Evangelical Lutheran Church for the construction of a church building at Hutchinson, Kan.

By the terms of the building contract, Tullis was required to give two bonds, one conditioned for the faithful performance of the contract, known as the performance bond; the other conditioned for the payment of all bills for labor and material, known as the statutory bond. Tullis executed both bonds, with the appellee as surety on each. There was a breach of the latter bond, by which appellee sustained loss. It demanded indemnity from appellant. This was refused, on the ground that the indemnity agreement did not cover the statutory bond. That portion of the indemnity agreement which is necessary to an understanding of the case, reads as follows:

"Know all men by these presents that, whereas, at the request of the undersigned, hereinafter referred to as indemnitors, and upon condition that this instrument be executed, the Federal Surety Company, hereinafter referred to as the company, a corporation of the state of Iowa, has executed or procured the execution of, or is about to execute or procure the execution of, a bond or bonds on behalf of R. A. Tullis, of Hutchinson, Kan., hereinafter referred to as principal, and in favor of board of trustees of the Zion Evangelical Church, covering contract in amount of $22,155 bond in same amount copy or copies of which may be hereto attached. * * *

"2. To indemnify the company from and against any and all liability, loss, costs, dam-

ages, attorney's fees and expenses of whatever kind or nature which the company may sustain or incur by reason or in consequence of executing any such bond or bonds as surety or cosurety, or procuring, upon its full indemnity, the execution thereof as aforesaid, and which it may sustain or incur in making any investigation on account of any such bond or bonds."

Appellee, conceding that the indemnity agreement as executed did not by its language expressly cover the statutory bond, but claiming that by mutual mistake the wording of the indemnity agreement did not correctly express the intention, understanding, and agreement of the parties, brought suit to reform the indemnity agreement, and to enforce the same as reformed. Appellant denied that there was any mistake. The cause was referred to a special master, who found from conflicting evidence as follows:

"We find, and the evidence clearly and decisively shows, that at the time of and prior to the execution of the indemnity agreement it was the intention and understanding between complainant and defendant that the defendant was to indemnify complainant against liability, loss, etc., on the performance bond and also on the statutory bond, and that both parties intended and understood that the indemnity agreement when drawn should so provide by its terms; and we find, and the evidence clearly and decisively shows, that solely through the mistake and misconception on the part of both the complainant and the defendant and of the scrivener at the times in question, the said indemnity agreement as written and signed did not express the real agreement and intention of the parties, in that it did not specifically describe the statutory bond as well as the performance bond, and indemnify complainant against liability, loss, etc., on each and both of said bonds, as was the intention of both parties that it should do."

And as a conclusion the master found that appellee was entitled to have the indemnity agreement reformed so as to specifically include the statutory bond, and further that appellee was entitled to recover under the agreement so reformed against the appellant the loss which appellee had sustained. The district court overruled exceptions to the report of the special master, approved his findings and conclusions, and entered a decree accordingly.

[1] Appellant attacks the finding of fact above quoted as not supported by the evidence. The rule is that a mutual mistake as the foundation for reformation of an instrument must be established by proof that is clear, convincing, and satisfactory. Mere preponderance of evidence will not suffice. Philippine Sugar, etc., Co. v. Philippine Islands, 247 U. S. 385, 38 S. Ct. 513, 62 L. Ed. 1177; Bailey v. Lisle Mfg. Co., 238 F. 257, 152 C. C. A. 3 (C. C. A. 8); Southern Surety Co. v. U. S. Cast Iron Pipe, etc., Co., 13 F.(2d) 833 (C. C. A. 8th, May 18, 1926).

[2] Appellant further contends that the mistake, if any, was one of law, and not of fact, and that equity will not reform a contract for mistake of law. Whether the mistake was one of law, it being thought that the language used in the indemnity agreement was sufficient to cover the statutory bond, or was one of fact, a forgetfulness or omission to mention specifically the statutory bond in the indemnity agreement, relief by way of reformation may be had in either instance, provided the facts warrant. Pomeroy Eq. Jur. (3d Ed.) §§ 839, 845. In Philippine Sugar, etc., Co. v. Philippine Islands, supra, the court stated the rule as follows: "It is well settled that courts of equity will reform a written contract where, owing to mutual mistake, the language used therein did not fully or accurately express the agreement and intention of the parties. The fact that interpretation or construction of a contract presents a question of law and that therefore the mistake was one of law is not a bar to granting relief." See, also, In re Smith-Flynn Com. Co., 292 F. 465, 471, 472 (C. C. A. 8); Tupman Thurlow Co. v. Drueding Bros. Co. (C. C. A.) 294 F. 677; Southern Surety Co. v. U. S. Cast Iron Pipe, etc., Co., supra.

In the case last cited this court said: "It may be stated as a general rule that reformation may not be had on account of a mere mistake of law, but to this general rule there are certain well-recognized limitations. A court of equity may grant relief where the parties having agreed to the terms of a contract, through a mutual mistake, or through a mistake of one and fraud of the other, in reducing the contract to writing, fail to express the contract agreed upon and intended."

[3] We turn to the record. It is undisputed that the specifications of the contract which Tullis had required him to give two bonds as above stated. William R. Martin, a witness for appellee, testified that he was state superintendent for appellee for Kansas; that he went to Hutchinson on July 6, 1922, at the request of Mr. Davis, the local representative of the company; that he met Mr. Tullis at the office of Mr. Davis; that he dis-

cussed the contract with Mr. Tullis; that he made out an application for a bond and took a financial statement from Tullis; that he then told Tullis that an indemnitor would be necessary; that Tullis said he had some one who would act; that Tullis either called or went and brought appellant; that a financial statement was taken of appellant, which was satisfactory; that the performance bond was then drawn up by Martin on a printed form; that Tullis then told him that another bond, a statutory bond, would have to be drawn; that he (Martin) then examined the specifications and found that this was so; that this was the first time he had known that a second bond would be necessary; that appellant was present at all of this conversation; that the second bond was then drawn, and also the indemnity agreement; that he intended the indemnity agreement to cover both bonds; that it was his thought that the language "bond or bonds" used in the indemnity agreement covered both bonds; that he showed both bonds and the indemnity agreement to Skelton, and told him the indemnity agreement covered both bonds; that he read to Skelton the clauses in the specifications requiring two bonds; that he said to Skelton, " * * * You're signing as indemnitor for this contractor, and, if he does not complete his contract, you as the indemnitor will have to complete it, and if he does not pay his material 'and labor bills, by reason of executing this indemnity agreement, you'll have to pay them;" that Skelton said, "It's too long to read; I have signed a good many of them;" that thereupon Skelton signed the indemnity agreement; that the two bonds, after execution, were given to Tullis, who took them away with him.

On the other hand, Skelton on his own behalf testified that nothing was said about a statutory bond at the meeting in the office of Davis; that he did not see any statutory bond written there; that he first learned there was a statutory bond when suit was brought. Tullis in his deposition, offered on behalf of appellant, testified that he did not know that a statutory bond had been executed by the appellee until after the filing of the present suit; that he did not know that his building contract required him to give a statutory bond; that he was present at the meeting in the office of Mr. Davis; that to his knowledge there was no conversation relative to the indemnity agreement by Skelton covering a statutory bond.

This testimony of the principal actors in the transaction which took place in the office of Mr. Davis, standing alone, clearly does not measure up to the required standard of proof of mutual mistake. But there is other evidence which must be considered:

A. R. Mann, a witness on behalf of appellee, testified that he was the architect for the church building in question; that he had told Tullis that a statutory bond would be required in addition to the performance bond, and that it 'was so specified in the contract; that Tullis brought both bonds to him immediately after their execution, and delivered them to him, and received in return his own certified check which the witness had been holding. These bonds, bearing the unquestioned signature of Tullis, were introduced in evidence.

Lincoln S. Davis, a witness for appellee, testified that the meeting of Tullis, Skelton, and Martin took place in his office; that the papers were drawn up and executed there; that there was a discussion relative to the statutory bond; that Tullis, Skelton, Martin, and himself were present at the discussion; that Tullis, Skelton, and Martin were present while the statutory bond was being dictated to the stenographer, and that he was present part of the time; that the bonds were delivered to Tullis after they were executed.

Myrtle Danforth, a witness for appellee, testified that she was a stenographer in the office of Mr. Davis; that on July 6, 1922, in that office, Mr. Martin dictated the two bonds to her, and that she typed them; that Tullis and Skelton were both present at the time.

The testimony of Tullis and of Skelton is thus greatly discredited, and that of Martin is corroborated. But, as to Skelton, this is not all. There is evidence in the record tending to show that he recognized that his liability as indemnitor did cover the statutory bond: (a) By paying bills covered by this bond after Tullis failed to pay them; (b) by soliciting appellee to pay such bills when he was short of funds; and (c) by promising, even after the work was completed, to reimburse appellee for the bills it had paid under the statutory bond.

After a careful consideration of the whole record, we have reached the conclusion that the proof is clear, convincing, and satisfactory that the agreement between the parties was that the indemnity contract should cover both bonds, and that it was by mutual mistake that specific mention of the statutory bond was omitted from the written instrument. We are fortified in this conclusion by the findings of the special master, adopted and approved by the trial court.

[4] The general rule is that findings of fact

by a special master, made upon conflicting evidence, and approved by the trial court, are entitled to great weight in the appellate court. Unless manifestly erroneous they will not be disturbed. Houchin Sales Co. v. Angert, 11 F.(2d) 115, 117 (C. C. A. 8), and cases cited.

[5] It is contended by appellant that the negligence of Martin, agent of appellee, in failing to specifically include the statutory bond in the indemnity agreement precluded the relief of reformation. We do not agree with this contention.

[6] Mere negligence, not amounting to the violation of a positive legal duty, does not prevent reformation, and especially if it appears that the other party has not been prejudiced thereby. Pomeroy Eq. Jur. (3d Ed.) § 856; Pomeroy Eq. Rem. § 680; 34 Cyc. 948; Farwell v. Home Ins. Co., 136 F. 93, 97, 68 C. C. A. 557; Shields v. Mongollon Expl. Co., 137 F. 539, 549, 70 C. C. A. 123; Benesh v. Travelers' Ins. Co., 14 N. D. 39, 103 N. W. 405, 407.

The negligence of Martin, under the circumstances disclosed, was a mere inadvertence. It did not rise to the dignity of a violation of a positive legal duty. Nor was appellant prejudiced thereby, for the evidence clearly and convincingly shows, as already pointed out, that appellant understood that he was indemnitor as to both bonds; that he recognized his liability while the contract was being performed, and after it had been completed.

One other matter is urged by appellant. It appears that the total cost of the work exceeded the total contract price. It is contended that in any event appellee should recover only the same proportionate amount of its loss as the contract price bears to the total cost of the work. The contention of appellant is attempted to be based upon a statute of Kansas governing mechanics' liens, which reads as follows:

"Provided, That if the owner of any land affected by such lien shall not thereby become liable to any claimant for a greater amount than he contracted to pay the original contractor; but the risk of all payments made to the original contractor shall be upon such owner until the expiration of the sixty days hereinafter specified." Section 60–1403, Rev. St. Kansas, 1923.

The argument of appellant appears to be this: Since the statutory bond took the place of the right to file a lien, and since a lien claimant could file a lien for only his proportion of the contract price, the appellee was under no obligation to pay the several claimants more than their proportion of the contract price, and, if it did pay more, the excess payment was voluntary, and could not be recovered of the appellant.

[7] The special master and the trial court both held that the appellee could recover the full amount paid. We agree with this conclusion. There was nothing in the statutory bond which limited the liability of the appellee surety company. The condition of the bond was for the payment of all bills for labor and material incurred in the prosecution of the work. This was in substantial accord with the requirement of the statute—that the bonds should be conditioned for the payment of all claims which might be the basis of liens on the property. There is nothing in the statute or in the bond which provides for the payment of the claims pro rata. The provision of the statute above quoted was for the benefit of the owner of the premises. It provided a way for him to protect himself against liens for labor and materials in excess of the total contract price. It did not, and was not intended to, protect the contractor from paying in full all bills incurred by him. The condition of the statutory bond was that the contractor should "pay all bills for labor and material incurred in the prosecution of the * * * work." There was no limitation or exception.

[8] Furthermore, the evidence shows that the claims were paid by appellee at the instance and request of appellant, and there is no showing that appellant limited his request to the payment of the claims pro rata. We think he is clearly estopped to make the contention for pro rata payment.

Decree affirmed.