ORRISON W. COLE, In Equity, *vs.* PEREZ FICKETT, and others.

Penobscot.	Opinion April 19, 1901.

*Deed. Mistake. Reformation. Equity. Trusts.*

A deed, as a muniment of title, can be shaken only by the most plenary and convincing evidence.

A mistake in a deed, if proved by plenary evidence, may be reformed, in a suit in equity between the parties to it.

*Held;* that it cannot be reformed, in this case, because the suit is not between the parties to the deed.

Where a person through fraud or mistake obtains the legal title and apparent ownership of property which in justice and good conscience belongs to another, such property is impressed with a trust in favor of the equitable owner.

The plaintiff's grantor, Fred E. Hall, in 1891, bought and paid for the "Kittredge Friend lot," which comprised lot 21 and a part of lot 148, as delineated on the plan of Etna, but by mutual mistake, the deed did not include lot 21. The plaintiff since his deed, and his grantor from the date of his deed until he conveyed to complainant, occupied the premises as the real and ostensible owners.

In 1893, Anna Fickett and F. Willis Fickett bought and paid for "the Otis L. Carter farm," which comprised lots 20, 29 and part of lot 149, and nothing. more. For many years prior this farm had been known as the "Otis L. Carter farm." By mutual mistake the deed of this farm from Emily H. Phelps included lot 21, which was never known as part of that farm, but had long been known as "the Kittredge Friend lot." The mistake in including lot 21 appears from full and plenary evidence as the mutual mistake of both parties to the deed. F. Willis Fickett, one of the defendants, was one of the grantees in the deed in which the mistake occurred. Ulysses G. Fickett,

Louisa Downes and Perez Fickett, three other defendants, claim by descent from Anna Fickett, an original grantee.

*Held;* that the plaintiff is entitled to a conveyance and release from the above defendants of all the right, title and interest in and to lot 21, which was conveyed by Emily H. Phelps to Anna Fickett and F. Willis Fickett, by her deed dated May 9, 1893; and that they together with William H. Hall and Emily H. Moore, two other defendants, through whom the legal title has passed, be perpetually enjoined from asserting any claim to said lot 21, on the plan of Etna, known as " the Kittredge Friend lot," or from conveying or attempting to convey the same except to the complainant, in accordance with the decree to be entered in this case.

The defendant Frederick A. Simpson is assignee of a mortgage of the Otis L. Carter farm in which is erroneously included lot 21. When the mortgage was given the mortgagor was seized of the legal title to lot 21, but did not hold the equitable title. Simpson is a holder without notice of the mistake.

*Held;* that his mortgage must be primarily charged upon the "Otis L. Carter farm" in exoneration of lot 21. If the plaintiff pays the mortgage, or if lot 21 shall be subjected to its payment, he is to be subrogated to the mortgage rights of Simpson.

On report.    Bill sustained.

Bill in equity alleging a constructive trust, growing out of a mistake in certain deeds under which the defendants claim title; and praying that the trust be executed for the plaintiff's relief and benefit.

The facts are stated in the opinion.

*C. A. Bailey,* for plaintiff.

*F. H. Appleton* and *H. R. Chaplin,* for defendants.

The plaintiff asks that lot 21 be eliminated from the Fickett deed. In other words, that the Ficketts be held as holding the title to lot 21 as constructive trustees—that they be decreed to release it, or in other words to lose it and its value. The Ficketts paid $3,500 for lot 20, 21 and 29 and the heater piece, and the complainant asks the court to deprive the Ficketts of lot 21 without any compensation whatever therefor, and to decree that Mrs. Phelps who herself created the mistake, if mistake there was, retain the full amount of the purchase money. Such a doctrine will never be entertained by any court of equity. In case of mistake or alleged mistake, assuming the mutuality of such mistake to have been proven and assuming the alleged mistake to have been

proven beyond a reasonable doubt, courts of equity will not grant relief unless the parties can be placed in statu quo. *Grymes* v. *Sanders*, 93 U. S. 55.

In order that a mistake may come within the cognizance of a court of equity it must be shown to be first, material, second, mutual, third, unintentional, fourth, free from negligence.

A complainant in a court of equity in order to entitle himself to a decree in his favor, granting relief on the ground of an alleged mistake, must first show that he was not himself guilty of negligence. In this case, there is a series of deeds, all of which are asked to be reformed on the ground of an alleged mistake, and that mistake occurring in conveyances between parties who lived upon the very land which they say was falsely described in the several deeds, which passed between them, and that the same mistake was perpetuated in the deed from Mrs. Phelps to these grantees. The mistake in the deeds to and from Emily H. Phelps occurs no less than six times. If ever a doctrine of negligence could be invoked in the case of a mistake in a deed, assuming all the facts and conditions and conclusions to be drawn therefrom as the complainant contends, it would seem as if this was such a case. *Parlin* v. *Small*, 68 Maine, 291 : *Western R. R. Corp.* v. *Babcock*, 6 Met. 352; 1 Story's Eq. § 146 ; 2 Pomeroy Eq. § 856.

SITTING : WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

STROUT, J. The evidence clearly establishes the following facts.

March 19, 1887, Emily H. Carter, who subsequently became Emily H. Phelps, and is now Emily H. Moore, owned lots 20, 29 and a part of lot 149, as delineated upon a plan of the town of Etna. These lots were all in one range, and adjoined each other in a north and south direction. They had been known for many years as the Otis L. Carter farm, or homestead. She also owned a small part of lot 148, and all of lot 21, containing about eighty acres, in the range next easterly from the Otis L. Carter

lots, which for many years had been known as the Kittredge Friend lot. All of these lots she conveyed on that day to William H. Hall.

On the tenth day of January, 1891, William H. Hall sold to his brother, Frederick E. Hall, the Kittredge Friend lot, being lot 21 and the gore in 148, excepting from the latter the orchard, for eight hundred dollars, which was the full value of the Kittredge Friend lot and the gore. By mistake of the scrivener, who drew the deed to Fred E. Hall and whom the parties supposed to be familiar with the premises, the boundaries given included only the small gore in 148, but to this description was added, "known as the Kittredge Friend lot." Both parties to the deed intended that it should, and believed that it did, convey not only the gore but lot 21, the Kittredge Friend lot. Neither party knew the numbers of the lots on the plan of the town, and there is internal evidence in the deed that the scrivener thought 21 was south of the Kittredge Friend lot. Immediately after delivery of the deed to Fred E. Hall, he went into possession of the gore and lot 21, occupied and treated the property as his, and so continued the ostensible owner without interruption or objection from any one, till October 12, 1895, when he sold and conveyed the same to the complainant as the "Kittredge Friend lot;" but his deed to complainant gave the same boundaries as those in his deed from William H. Hall, thus repeating the original mistake. Thereafterward, complainant took and retained possession of lot 21 and the gore, as owner, without objection by any of the respondents, until discovery of the mistake in the deed in 1896.

February 11, 1891, William H. Hall conveyed back to Emily H. Carter, and by like mistake included in his deed lot 21 which he had previously sold to Fred E. Hall, and which he believed he had conveyed to him. He also was ignorant as to the true numbers of the lots on the plan. He intended to convey to Mrs. Carter, and she expected to receive, only the Otis L. Carter farm, which was composed of lots 29, 20 and a part of lot 149, all in the same range, and not in the range with 21.

May 9, 1893, Emily H. Carter, whose name was then Emily H.

Phelps, sold to Anna Fickett and F. Willis Fickett the Otis L. Carter farm. Nothing more was understood or contemplated by either party. But the deed again, by mistake, included lot 21. The Ficketts understood that the land they bought was all in one range, and that the lots adjoined each other in a north and south direction. Fred E. Hall was then occupying lot 21, in the next range easterly. His title was not disputed by the Ficketts, nor any claim made by them, till 1896, when the mistake was discovered. In the meantime, the Ficketts leased of Fred E. Hall, for two years, the Kittredge Friend lot (21), paid rent therefor to him, and Perez Fickett, husband of Anna, negotiated with him for its purchase. Until 1896, the Ficketts were satisfied with the land they got as the Carter farm, and in fact obtained the land which they had bought. When the mistake in the deeds was discovered, they then claimed 21, because named in their deed. Anna Fickett having deceased, her title descended to the four respondents Perez Fickett, F. Willis Fickett, Ulysses G. Fickett and Louisa Downs.

The result of this succession of errors in the description of lands conveyed, is, that the Ficketts and Downs hold the legal title to the Kittredge Friend lot, which they never bought or paid for, and to which they never made any claim till discovery of the mistake in 1896, and which Mrs. Phelps never intended to convey to her grantees, Anna and F. Willis Fickett, and did not know that she had conveyed; and Fred E. Hall has not received the legal title to that lot which he bought and paid for, and which his grantor intended to convey and supposed he had conveyed to him. The complainant, who bought of Fred E. Hall lot 21 and the gore, finds himself in the same predicament.

Can equity afford relief to the complainant? It is well settled that in case of mutual mistake in a deed or contract, the error may be corrected, in a suit between the parties to it, unless innocent parties, without notice of the mistake, may be injuriously affected. *Andrews* v. *Andrews,* 81 Maine, 339; *Cross* v. *Bean,* 81 Maine, 529. As this suit is not between the parties to the deed to Fred E. Hall, nor the deed to the Ficketts, reformation of those deeds cannot be specifically granted.

But there is another principle recognized in equity, that when one person, through mistake or fraud, obtains the legal title and apparent ownership of property which in justice and good conscience belongs to another, such property is impressed with a use in favor of the equitable owner. Pomeroy's Equity, § 981; *De Riemer* v. *De Cantillon*, 4 Johns. Ch. 90; Perry on Trusts, § 186; *Gillespie* v. *Moon*, 2 Johns. Ch. 585; *Brown* v. *Lamphear*, 35 Vt. 252; *Loss* v. *Obrey*, 7 C. E. Green, 52; *Farley* v. *Bryant*, 32 Maine, 488.

It is very clear, that the Ficketts' and Downs' legal title to lot 21, the Kittredge Friend lot, was derived through a mistake in the description in Mrs. Phelps' deed, that this mistake was mutual between Mrs. Phelps and her grantees, and that in equity the plaintiff, as grantee of Fred E. Hall, is entitled to it. It is, therefore, charged with a constructive trust or use in his favor. Being so charged, a court of equity will protect and perfect his equitable, by compelling a conveyance of the legal, title.

If it was necessary to the result to show that the Ficketts, the original grantees, had notice of the equitable title of Fred E. Hall, such notice might well be inferred from the possession of Fred E. Hall, and his use of lot 21, and the recognition of his title by the Ficketts, in leasing the lot from him, admitted by their answer, and in negotiation for its purchase from him by Perez.

In this case, however, the question of notice is not involved. It is not the case of a supposed purchase of lot 21. The Ficketts never negotiated for that lot from Mrs. Phelps. They proposed to buy, and did buy, the Otis L. Carter farm, which was in another range, and all they proposed to buy or pay for was that farm. No thought of the Kittredge Friend lot was in their minds or that of their grantor. No equity in their favor arises from the mistaken inclusion of lot 21 in their deed.

But it is said, that Mrs. Phelps represented to the Ficketts, her grantees, that she was selling them three eighty-acre lots, as the Otis L. Carter farm, and as that farm contained only two eighty-acre lots and a part of another lot, they should hold lot 21. Mrs. Phelps denies that she made any such representation. The

Ficketts admit that they did not understand they were buying the Friend lot, or any lot easterly of the Otis L. Carter farm. They say they thought 21 was south of 20, and not as it is, east of it. If they have suffered from any misrepresentations by Mrs. Phelps in the quantity of the land purchased, they must look to her for satisfaction. They have no equity to be compensated by the land equitably owned by Fred E. Hall, and now by his grantee, the complainant.

Mrs. Phelps, while holding the legal but not equitable title to lot 21, and also owning absolutely the Otis L. Carter farm, mortgaged the Carter farm and lot 21 to William H. Hall. This mortgage was assigned to Frederick A. Simpson, who now holds it. There is no evidence that Simpson had any knowledge of the mistake as to lot 21, and consequently his mortgage is unaffected by it. To do full equity between all parties, that mortgage should be charged primarily upon the Otis L. Carter farm. If, to effect its payment, any part of lot 21 is required, on its payment by complainant he will be subrogated to the rights of the assignee of that mortgage.

In coming to this conclusion, we have given full force to the rule that a deed is a muniment of title, to be shaken only by the most plenary and convincing evidence that it does not represent the real title. In this case the proof seems to us clearly of that character.

Bill sustained. Perez Fickett, F. Willis Fickett, Ulysses G. Fickett, Louisa Downs, William H. Hall and Emily H. Moore to be perpetually enjoined from asserting any claim to lot 21 on the plan of Etna, known as the Kittredge Friend lot, or from conveying or attempting to convey the same, except to the complainant, in accordance with the decree to be made in this case. Perez Fickett, F. Willis Fickett, Ulysses G. Fickett and Louisa Downs to release and convey to the complainant all the right, title and interest in and to said lot 21, which was conveyed by Emily H. Phelps to Anna Fickett and F. Willis Fickett, by her deed dated May 9, 1893. Complainant to recover one bill of costs against Perez Fickett, F. Willis Fickett, Ulysses G. Fickett and Louisa Downs. Bill dismissed as to Fred E. Hall and Frederick A. Simpson.

*Decree accordingly.*