FIRST NATIONAL BANK OF THE TOWN OF UNION, NEW JERSEY, respondent,

*v.*

WILLIAM FESSLER et al., appellants.

[Argued June 16th, 1914. Decided January 27th, 1915.]

1. If an instrument is to be reformed in equity, all persons to be affected by the reformation must be in court.

2. Before equity will reform an instrument upon the ground that through a mutual mistake, it does not express the intention of the parties, the mistake must be shown to have been mutual by clear and convincing evidence, for this remedy will not be granted upon a probability, nor upon a mere preponderance of evidence, but only upon clear proof, amounting to a reasonable certainty, that the mistake was mutual, and that both parties intended to express what does not appear in the writing, or that they intended something different from what is to be implied from the words used.

On appeal from a decree of the court of chancery advised by Advisory Master Maximilian T. Rosenberg.

*Mr. J. Emil Walscheid,* for the appellants.

*Mr. John J. Fallon,* for the respondent.

The opinion of the court was delivered by

BERGEN, J.

The complainant holds in due course a negotiable promissory note drawn by Thomas F. Purcell to his own order, endorsed by him and by M. William Hilbert, John H. Eastwood and William Fessler, in the order stated. The note was written, and, as endorsed, was for $33, with a blank space between the words "thirty-three," and dollars; it also contained, on the upper left-hand corner, the figures $3,300.00, and in this form was discounted by the complainant, for the account of Hilbert, as a note drawn for $3,300, the proceeds of which Hilbert drew. After non-payment and protest, the complainant filed its bill of complaint against the maker and endorsers, praying that the note be reformed to read $3,300, instead of $33, as written, upon the ground that through a mutual mistake of all the parties to the transaction, the note did not express their true intention. The only defendants served with process were Hilbert and Fessler, the others being non-residents and not brought within the jurisdiction of the court. Hilbert made no defence, but Fessler filed an answer denying the alleged mistake and averring that he had no intention to endorse for any sum other than $33, as written in the note. The master who heard the case for the chancellor ad-

vised that the note be reformed as prayed in the bill, and a decree was thereupon made adjudging that the note be reformed as prayed by the complainant, although it cannot be binding against some of the endorsers prior to Fessler, they not being in court. The effect of this decree is to make Fessler an endorser on a note for $3,300, while it still remains a note for $33, so far as the maker and the prior endorser, Eastwood, are concerned, and who are primarily liable to protect Fessler. There is no evidence in the case that there were any dealings or negotiations between the complainant and Fessler, or that his endorsement was the result of any mutual mistake between the complainant and Fessler, but the complainant bases its right to relief upon the ground that, as between Hilbert and Fessler, there was a mutual mistake, and that when it acquired the note from Hilbert, it was entitled to the benefit of such mutual mistake. This note is negotiable in form, and whether the purchaser of negotiable paper is entitled to have such paper reformed because of an alleged mutual mistake between one endorser and another, as to the amount the note was intended to be drawn for, is a question not necessary to be determined in this case. Hilbert manifestly could not require reformation, because the note was endorsed by Fessler for his accommodation, and we are not to be understood as conceding, that under the facts in this case he could, by his subsequent dealings with the note, confer upon the party to whom he transferred it a greater right than he himself would have, because this case can be disposed of on other grounds, but in dealing with this case, we have assumed that a holder in due course may have the advantage of a mutual mistake between the original parties where the note is executed and delivered with all the *indicia* of an ordinary negotiable promissory note.

There are two reasons why this decree cannot be sustained. The first is, that the court did not have before it all the parties which the decree undertakes to bind, for, by its terms, it makes the note read, as one given for $3,300 against the maker and all the endorsers, and as expressing, "the true intention and meaning of the parties to said note." There is no evidential proof in the case that either the maker or Eastwood, who endorsed the note prior to Fessler, intended to make a note different from the

contract as it now appears. There was testimony by Hilbert that he asked Purcell and Eastwood to make and endorse a note for him for $3,300, but the trial court limited the effect of the evidence to the defendant Hilbert, and expressly said, that it had no force whatever against the defendant Fessler, and no cross-examination was had on that subject, and manifestly it could not bind Purcell or Eastwood, as neither had been brought into court, therefore the adjudication that the note should be reformed as to them is without foundation in this record. The injury which the defendant Fessler suffers is, that he is made liable as surety on a contract which, so far as this adjudication goes, his principal never made, for as to all who are primarily bound, and to whom he could have recourse, except Hilbert, the contract could not be reformed.

That the court did not have jurisdiction over the maker and prior endorser is no excuse for reformation as to Fessler, for, if the instrument is to be reformed, it must be reformed as to all parties to it, and bind each alike, and that manifestly cannot be done in the present state of this record.

The second reason is, that there is no sufficient proof of the mutual mistake between Hilbert and Fessler set up in the bill of complaint. There is some proof to which reference will be made, but it is not of that character which the law requires to support the reformation adjudged, for before equity will reform an instrument upon the ground that through a mutual mistake it does not express the intention of the parties, the mistake must be shown to have been mutual by clear and convincing evidence, for this remedy will not be granted upon a probability, nor upon a mere preponderance of evidence, but only upon clear proof, amounting to a reasonable certainty, that the mistake was mutual, and that both parties intended to express what does not appear in the writing, or that they intended something different from what is to be implied from the words used.

The complainants' case rests almost entirely upon the testimony of Hilbert, for whose accommodation the note was endorsed. What he says is, that he told Fessler that he needed about $3,300, and wanted to know whether he would endorse a note for him for that sum; that Fessler agreed to do this, and

on the day following he went to a hospital where Fessler was engaged as a physician; that they went into the visiting-room, and he handed the note to Fessler who looked at the face of it and said, "This is for Thomas F. Purcell," to which the witness replied that Purcell had made the note for his accommodation, and therefore if he, Fessler, would endorse the note, it would not be for Purcell's accommodation, but for his, and then Fessler said, "I will endorse the note for you, if that is the case;" that Fessler then endorsed the note, handed it to Hilbert, who took it to the bank and had it discounted for $3,300, although it was written for $33. On the other hand, Fessler testified that all he intended to endorse was a note for $33, and that he saw that the note was so written when he endorsed it; that the first he knew about endorsing the note was when Hilbert called him on a telephone and asked him if he would endorse a note, to which he replied that he would, and that nothing was said about the amount of the note; that he asked Fessler where he was and he replied that he would be at the hospital; that Hilbert came there, handed him this note, which he looked at, saw it was for $33, and then endorsed it.

It is not necessary to recite all of Fessler's testimony; it is sufficient to say that he absolutely denies all that Hilbert said with reference to the amount of the note, and says that after he endorsed it, he paid no further attention to it until after it was protested, and then he was told by an officer of the bank that it was for $3,300.

So far as the testimony of these two witnesses is concerned, it is practically the oath of one against the other, and under such circumstances, nothing more appearing, the credibility of neither witness being assailed, it cannot be said that the complainant has made out such a case as would warrant a reformation, for, in addition to the oath of Fessler, we have the very pertinent fact that the writing corroborates him. But the complainant urges that there are circumstances in this case which sufficiently corroborate Hilbert to bring the complainants' case within the rule above stated. One is, that after the note was protested, Fessler and his attorney went to the bank and asked to see the note, and when it was presented, the attorney said, "Well that note is only

for $33." This circumstance, we think, rather makes in favor of the defendant, because if he knew he had endorsed a note for $3,300, he would hardly have gone to the bank and asked to see the note. On this point Fessler says that he went to the bank with his attorney because one of the directors told him that a note for $3,300, on which he was an endorser for Hilbert, had gone to protest, and when asked why he engaged counsel to go with him to the bank to see about the note, his reply was: "Well, when a man tells me a note has gone to protest for $3,-300, and if I had not endorsed such a note, why, I thought I ought to see somebody."

The next circumstance relied on is, that Fessler had taken from Hilbert some bank stock as collateral. The paying teller of the bank testified that when Fessler and his attorney came to the bank to see about the note, Fessler said that he was secured, that Mr. Hilbert had assigned some stock to him, and asked whether the stock had been transferred on the books of the bank, and from this it is argued that the note must have been intended to be more than $33, otherwise Fessler would not have asked or taken security. But the attorney, who was with Fessler at the time, testified that nothing was said about the assignment of bank stock, and Fessler, as a witness, positively denied ever having had any such security, or any other security. Another witness, named Hannan, testified that Fessler told him that he had received an assignment as collateral security for the note, the equity in some stock, and that he showed him a written assignment, but all he recollected was that it was an assignment to Fessler as collateral security for the endorsement of a note, but was not sure, he was only giving the best of his recollection, and when asked whether the paper was not an assignment of some stock as security for any or all notes that Fessler might endorse, he was not able to say, nor did he recollect whether the paper he saw was signed by Hilbert, or anyone. But even if this be true, it is not proof that Fessler signed or endorsed, or intended to endorse this particular note as a note for $3,300, and, in view of the fact that Fessler denies any such assignment, we are not inclined to think that this evidence is sufficient to bring the case within the very strict rule required to be applied in cases

of this character. It also appears that Dr. Hellstern was present when Fessler endorsed the note, and that he spoke to him about it, and that Fessler said that it was only a note for $33. The witness said that this conversation took place in the presence of Hilbert as he was leaving the room. He further testified that he was in the room with Fessler the day the note was endorsed, and that all Hilbert said was, "Here is the note," and then Fessler took it and endorsed it and that nothing was said by Hilbert at that time about the amount of the note, nor did the witness know what the amount of the note was until Fessler said that it was $33.

We have examined very carefully all the testimony in the case and fail to find any which sufficiently shows that when the defendant Fessler endorsed this note he intended to endorse a note for $3,300, and there must be some evidence to satisfy us to a reasonable certainty that this was what he intended to do before we can safely say that there was a mutual mistake as to the amount of the note. The note itself is presumed to express the contractual intention of the parties at the time it was endorsed; Hilbert says that it does not, while, on the other hand, Fessler is just as positive that it does. And there are no circumstances proven in this case of such a clear and convincing nature as is required to justify a finding that Fessler intended to then endorse a note for $3,300, and, in the absence of such proof, equity ought not to reform a promissory note from $33 to $3,300, by the exercise of its great power to reform instruments, which has been described as "the high remedy of reformation."

The decree will be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, WILLIAMS—13.