## BRADSHAW *v.* PROVIDENT TRUST CO.

### (158 Pac. 274.)

**Mortgages—Foreclosure by Action—Pleading—Cross-complaint.**

1. In a suit to foreclose a mortgage, a grantee of the mortgagor, if all the parties are before the court, may by cross-complaint seek reformation of his deed of the premises, by striking out a clause fraudulently inserted therein obligating him to pay the mortgage.

**Mortgages—Transfer of Property—Assumption of Mortgage Debt—Fraud.**

2. In such case, if the fraud is proved, or that the clause was inserted in the deed without the grantee's knowledge, he is not liable thereon to mortgagee.

**Reformation of Instruments—Grounds—Negligence.**

3. In such case, the failure of the grantee to read the deed before accepting it is not such negligence as will bar his relief.

**Reformation of Instruments—Sufficiency of Evidence.**

4. In a suit to foreclose against a grantee of the mortgagor pleading that he did not assume the mortgage and asking for reformation of his deed, the evidence showed that he did not agree to assume it, but that a clause purporting so to obligate him was inserted in one of eleven similar deeds without his knowledge.

**Reformation of Instruments—Grounds—Mistake or Fraud.**

5. Generally, where a memorandum in writing fails to conform to the contract between the parties in consequence of their mutual mistake, however induced, or the mistake of one party and fraud of the other, a court of equity will reform the instrument so as to make it conform to the actual stipulation of the parties.

[As to causes and proceedings for reformation of instruments, see note in 65 Am. St. Rep. 481.]

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

Plaintiff James B. Bradshaw sues to foreclose a mortgage executed on December 22, 1913, in his favor by the Provident Trust Company to secure the payment of its note for the principal sum of $10,000. The note was indorsed by the defendant G. F. Johnson, who was president and manager of the corporation at the time. The complaint is in the usual form, but in paragraph 9 thereof it is alleged, in substance, that on June 15, 1914, the mortgagor conveyed its interest in the mortgaged premises to the defendant Charles K. Henry; that for a valuable consideration he covenanted "with the said Provident Trust Company that the said note and mortgage of the plaintiff herein should be paid at maturity." Plaintiff prays for a personal judgment against the company, Henry and Johnson.

Henry and wife answered admitting the execution of the mortgage and that the property was conveyed to him by the Provident Trust Company subject to the mortgage, but denying that he made the alleged covenant to the company. He set forth a further and separate defense by way of a cross-complaint in effect as follows: That prior to his taking the deed from the Provident Trust Company he held its unsecured bonds in the sum of $94,607.50, upon which it had defaulted in the payment of interest due thereon; that the company had acknowledged to him that it could not pay these bonds in money, and had induced him to accept in part payment thereof a conveyance to him of its equity in a large amount of suburban property in the City of Portland, Oregon, including that covered by

plaintiff's mortgage, subject, however, to certain mortgage liens thereon and street and sewer assessments; that Henry did not covenant nor agree with the company to assume or pay plaintiff's mortgage, but agreed only to take its equity therein at a stipulated value; that Miller Murdock, attorney for the company, submitted to him a blank form of deed to be used by it in making the conveyance, which form contained no covenant or agreement on the part of the grantee to assume and pay any prior lien; that the company agreed to make the several deeds in conformity with this blank, and, reposing confidence in Murdock and in Johnson, the company's president, he left the making of the deeds to them; that, intending to wrong him and without his knowledge or consent and contrary to their agreement, they purposely inserted in the deed a covenant binding the grantee to assume and pay a prior encumbrance upon the property conveyed, it being in part as follows, "and which encumbrances the grantor herein agrees to assume"; that, prior to the delivery of the deed in question, Johnson represented to Henry that all the deeds, eleven in number, were made according to the form previously submitted, and that, relying thereon, he did not examine them further than to check the descriptions of the property therein, with others assisting him; that he did not discover the wrongful insertion of the covenant until some time after the deeds had been recorded; that plaintiff demanded of him payment of the mortgage, whereupon he disclaimed liability thereon; that plaintiff is now claiming that the use of the word "grantor" in the covenant of said deed is a clerical error for grantee, and that he is bound personally to pay the debt of the Provident Trust Company. Henry prays for a refor-

mation of the deed as against the company and the plaintiff, by striking out said pretended covenant.

The Provident Trust Company. replied to Henry's cross-complaint denying the material allegations thereof. Neither Johnson nor the plaintiff replied thereto, and the allegations thereof stand as admitted by them.                                REVERSED.

For appellant there was a brief over the name of *Messrs. Manning, Slater & Leonard,* with an oral argument by *Mr. Woodson T. Slater.*

For respondent, James B. Bradshaw, there was a brief and an oral argument by *Mr. Chester G. Murphy.*

For respondents, Provident Trust Company and G. F. Johnson, there was a brief and an oral argument by *Mr. Miller Murdock.*

MR. JUSTICE BEAN delivered the opinion of the court.

1-3. The issues to be tried are: (1) Whether Charles K. Henry, when taking the title from the Provident Trust Company, agreed to assume and pay plaintiff's mortgage; and (2) whether the covenant was put into the deed by the Provident Trust Company in fraud of Henry's rights. The parties affected by the contract being in court, it was proper for defendant Henry to plead the facts as a basis for the reformation of the deed: *Albany City Savings Inst.* v. *Burdick,* 87 N. Y. 40. If the clause binding Henry, the grantee, to assume and pay the mortgage, was inserted in the deed fraudulently or without his knowledge so that he never gave his intelligent consent to the agreement, he is not liable thereon to the mortgagee: *Parker* v. *Jenks,* 36 N. J. Eq. 398; *Bull* v. *Titsworth,* 29 N. J. Eq. 73; *Albany City Savings Inst.* v. *Burdick,* 87 N. Y. 40.

Where one party to a contract is intrusted by the other to draw the written instrument to accord with the agreement, he will be held strictly to a faithful performance of the trust so reposed, and will not be held to say that the party defaulted should not have placed confidence in him: *Barlow* v. *Scott*, 24 N. Y. 40; *Botsford* v. *McLean*, 45 Barb. (N. Y.) 478; *Archer* v. *California Lbr. Co.*, 24 Or. 341, 345 (33 Pac. 526). The failure of Henry to read the deeds before accepting them is not such negligence as will deprive him of the relief for which he prays: 6 Pomeroy, Eq. Juris., § 680; 2 Pomeroy, Eq. Juris., § 856; *Archer* v. *Cal. Lbr. Co.*, 24 Or. 341, 345 (33 Pac. 526); *Howard* v. *Tettelbaum*, 61 Or. 145 (120 Pac. 373).

4. The record shows that the proposition for the liquidation of the bonds of the Provident Trust Company held by Henry was largely by letter. On June 4, 1914, Mr. Henry wrote the company that:

"After considering the certified accountant's report and giving full consideration to the situation of your company and your proposal to accept properties in payment of the bonds, I hold of your company, I submit the following proposal to be accepted or rejected by 2:00 P. M. this 4th day of June. * * The properties enumerated and listed by you as under the Bradshaw mortgage of $10,000, leaving an equity of $33,336."

By this letter Mr. Henry required payment of a cash balance of $11,464. By letter of June 15th, the company informed Henry that they could not raise the money, but submitted for his consideration additional properties and $5,000 for a return of a portion of the property. The arrangement having been made, Henry departed for California and authorized the Title & Trust Company of Portland to deliver to the Provident Trust Company, or Mr. G. F. Johnson, bonds of

the Provident Trust Company in the sum of $72,300 upon delivery of the proper deeds of conveyance from that company to Henry. At the time of the transfer, however, on June 15, 1914, Henry returned and assisted in the examination of the eleven deeds. It appears that the Provident Trust Company had a printed form of deed. Henry asserts that he examined only one form of deed, of which the covenant was in substance as follows:

"And the said grantor does covenant to and with the said grantee, his heirs and assigns, that it is lawfully seised in fee of the above-granted premises; that they are free from all encumbrances, save and except taxes, street and sewer improvements and bonded indebtedness and a mortgage of $2,100 in favor of I. G. Davidson and interest on said mortgage and conditions and restrictions above mentioned"—there being no covenant that the grantee assumed to pay the mortgage.

Henry claims that he did not examine the deed embracing the property covered by the Bradshaw mortgage, but was informed that the deeds were all alike, except that some were typewritten, as the descriptions of the property were too lengthy for the printed form.

A careful examination of the evidence does not show that there was any proposition made or agreed to that Henry should assume the mortgage in question. Mr. Johnson, the president of the Provident Trust Company, states that the matter was not discussed at the time. Afterward, when the question was called to his attention, he appeared to think that it made no difference whether the clause was inserted or not. He testifies that it was inserted intentionally. It was certainly for his interest that such a covenant be contained in the deed. In view of the fact that it was, as it were,

buried in the eleven deeds, and Henry relied upon the
information which he had received from some of the
officers of the Provident Trust Company that the deed
was like another which he did examine, fair dealing
required that his attention should be called to the
clause when it had been inserted.   As we understand
the record, the trial court was of the opinion that
Henry was precluded from obtaining relief on account
of failing to read all the deeds.   The eleven were pre-
sented to him and he did not examine the one in ques-
tion.   The matter is better explained by the common
phrase that they ''slipped one over on him.''

The value of the equities in each class of the proper-
ties was admitted by the parties in the letters which
passed between them on June 5, 1914, and the sum total
thereof did not equal the amount of the debt by $5,000,
which amount was to be liquidated and paid by the
owner.   This, in addition to the express words of the
respective letters, tends to show that Henry did not
agree to assume and pay the plaintiff's mortgage as
a part of the consideration of the conveyance of the
title to these properties.   There is some conflict in the
evidence of Henry and of Johnson, president of the
Provident Trust Company.   John F. Daly, an officer
of the Title & Trust Company, who had considerable
to do with the adjustment of the matter and was
familiar with the arrangement, understood that Henry
was to take over all the equities in the properties
according to the lists which he had.   His evidence
tends strongly to corroborate that of Henry.   The
latter had deeded a large amount of real estate to the
Provident Trust Company for the bonds which he
held.   Some of this had been encumbered heavily by
the Provident Trust Company, and it appears to have

been the very object of Henry to obtain what property he could for the bonds and obviate all the loss possible and not to assume indebtedness. He was accustomed to deal in realties of this kind, and apparently understood what is termed an equity in encumbered property. It appears that he desired to obtain the property or a chance thereon over and above the encumbrances, and did not become responsible for the mortgage.

5. It is the general rule that where a memorandum in writing fails to conform to the contract between the parties in consequence of their mutual mistake, however induced, or the mistake of one party and fraud of the other, a court of equity will reform the instrument so as to make it conform to the actual stipulation of the parties: *Albany City Sav. Inst.* v. *Burdick,* 87 N. Y. 40. In *Parker* v. *Jenks,* 36 N. J. Eq. 398, the syllabus reads as follows:

"Although a deed for lands contains the grantee's personal assumption to pay a mortgage thereon, he cannot be held liable for a decree for deficiency after foreclosure of the mortgage, if it appears that such assumption was not part of his bargain for the purchase of the premises, and that he had no notice of its insertion in his deed."

In *Andrews* v. *Gillispie,* 47 N. Y. 487, the attorney who drew the mortgage in question therein made it payable in five years instead of ten, as agreed between the parties. The court held that the mortgagor could have it reformed. In that case he could have discovered the mistake by simply reading the mortgage, and no artifice was used to prevent him from so doing. He executed it believing that the attorney had drawn it correctly, just as Henry in this case accepted the deed,

believing it had been drawn correctly, and the fault or negligence was just as great in the one case as in the other, and certainly, if such negligence does not bar relief on the ground of mutual mistake, there can be no foundation for saying that it should do so in the case of a clause inserted in an instrument by fraud. It is certainly not in consonance with equity and good conscience that one who by any means has perpetrated a fraud should be allowed to say to the defrauded party when he seeks relief in a court of conscience that he ought to have known better than to have believed and trusted him. The fraud alleged in the case at bar is clearly established. The decree of the lower court will be reversed, and one entered here striking from page 2 of the deed conveying the property embraced in the Bradshaw mortgage (Exhibit A) the words, "and which encumbrances the grantor herein agrees to assume," as prayed for in the answer of defendant Henry.                                            REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HARRIS and MR. JUSTICE BENSON concur.

MR. JUSTICE EAKIN absent.