Argued July 8, affirmed September 9, rehearing denied October 7, 1919.

# WELCH v. JOHNSON.

(183 Pac. 776; 184 Pac. 280.)

**Pleading—Complaint, Though Demurrable, Sufficient Against Objection not Raised Below.**

1. A complaint, in a suit to reform a deed by striking out a purported obligation of purchaser to pay a note and mortgage, and relieve him from liability to a deficiency judgment (Section 426, L. O. L.), although subject to demurrer for not giving a more specific explanation of plaintiff's own conduct to show that the mistake did not arise from his own gross negligence, *held* sufficient as against an objection thereto urged for the first time upon appeal, as every reasonable inference should be given in favor of the complaint that can be drawn therefrom.

**Pleading—New Matter in Substance Amounting Merely to Denials Requires No Reply.**

2. Where following the words, "This defendant admits and alleges," the answer makes affirmative statements which in form are new matter, but in substance amount merely to denials, a reply is unnecessary.

[As to matters presumptively within knowledge of defendant in general forming limitation in use of denial, see note in 133 Am. St. Rep. 109.]

**Appeal and Error—Finding of Lower Court will not be Disturbed.**

3. In a suit to reform a deed, finding of trial judge, who heard and saw the witnesses, that there was a mistake should not be disturbed, the contrary evidence consisting only of a few suspicious circumstances.

**Mortgages—Mortgagee Cannot Urge Assumption Clause Inserted by Mistake.**

4. Mortgagee cannot avail himself of assumption clause inserted through mistake or oversight of the scrivener, and without the knowledge or consent of either grantor or grantee.

**Reformation of Instruments—When Authorized for Mistake of Stenographer of Party.**

5. Where both plaintiff, seeking to reform a deed by striking out a clause assuming a mortgage made by his grantors to mortgagee, and his grantors, agree that the clause was inserted by mistake, and no element of estoppel being available to the mortgagee, who was not induced by the assumption provision to change his position to his disadvantage, *held*, that purchaser was not guilty of such negligence in failing to read the deed prepared by his own stenographer, and executed and recorded by his grantors, as would prevent reformation of the deed.

Appeal and Error—Reformation of Instruments—When Defect in Necessary Parties Defendant is Immaterial.

6. In a suit to reform a deed by striking out the clause obligating purchaser to pay a note and mortgage, purchaser's grantors, as well as their mortgagee, should be made parties, but, on mortgagee's appeal from a judgment for purchaser, the cause need not be remanded for failure to make grantors parties, where they, as witnesses for plaintiff, testified that he did not agree to assume the note and mortgage, which estops their denial thereof.

## ON PETITION FOR REHEARING.

Attorney and Client—Implied Authority of Attorney to Admit Away Client's Case.

7. A general attorney had no implied authority, merely from his employment, to bind his client by an admission there was no mistake in the terms and conditions of the conveyance to the client, in the absence of pending litigation in which he was appearing as attorney of record.

Evidence—Admission in Brief Binding Only as to Parties to Litigation.

8. An allegation in a brief could bind only the parties to the litigation, and not another party for whom one of the attorneys who prepared the brief was counsel.

Reformation of Instruments—Preparation of Deed in Office of Plaintiff's Attorney No Defense.

9. Though the deed which plaintiff sues to correct was prepared in the office of his attorney, it was not necessarily any the less a mistake to include the disputed clause.

Reformation of Instruments—Preparation of Deed in Office of Plaintiff's Attorney as Showing Negligence.

10. That the deed whose reformation is sought was prepared in the office of plaintiff's attorney is properly considered on the point that to be relieved from mistake it must appear the mistake was not due to party's negligence.

Reformation of Instruments—Negligence Preventing Relief Against Mistake must be Violation of Duty.

11. The negligence which would prevent relief from mistake in a deed by reformation of the instrument must be such as amounts to violation of a positive duty owing the other party.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.

The object of this litigation is to determine whether a deed, delivered to A. Welch, should be reformed by striking out a provision which purports to obligate Welch to pay a note and mortgage held by John R.

Johnson. On October 28, 1911, John R. Johnson sold and conveyed a tract of orchard land in the Hood River section to Lillie J. Scott Ricord for the agreed price of $13,500. Lillie J. Scott Ricord paid $3,000 in cash and she and her husband gave their note to Johnson for $10,500 for the balance of the purchase price. The note was payable five years after October 28, 1911. The Ricords secured the note by giving a mortgage on the land purchased from Johnson. On November 1, 1912, the Ricords conveyed the land to Katherine Vreeland. The deed received by Katherine Vreeland was made subject to the mortgage held by Johnson and also contained these words:

"The payment of which said promissory note and the release of the said mortgage, executed to secure the same, is hereby assumed by the said Katherine Vreeland."

On November 7, 1912, Katherine Vreeland and her husband George Vreeland deeded the land to her father A. Welch; and this deed contained the following provision:

"The payment of which said promissory note, and the release of said mortgage executed to secure the same is hereby assumed by the said A. Welch, the grantee hereunder; and that we will, and our heirs, executors and administrators shall forever warrant and defend the same from the lawful claims and demands of all persons whomsoever, save and except as to the said mortgage and promissory note which the said A. Welch hereby assumes and agrees to pay."

On February 3, 1914, Welch conveyed the property to the Pacific Land Company, a corporation. The Pacific Land Company quit the property, and afterwards on March 15, 1915, because of the fact that the fruit trees and the strawberry plants needed care and

93 Or.—38

attention, Johnson entered upon the premises and since that time has been in possession.

Claiming that the assumption clause in the deed from the Vreelands to Welch made the latter liable for the payment of the note, Johnson began an action against Welch for the recovery of $10,500, the principal due on the note, together with accrued interest, and $1,000 attorney's fees. Welch answered the complaint in the action and then commenced this suit by filing a complaint in the nature of a cross-bill. A second amended complaint was afterwards filed and this pleading contains five alleged causes of suit. In the first cause of suit the plaintiff avers that negotiations between Welch and the Vreelands resulted in an agreement to the effect that the Vreelands were to convey to Welch their equity in the property and that Welch should take the premises subject to the mortgage; that there was never any understanding or agreement that Welch was to assume or pay the note and mortgage; that in the preparation of the deed and through the mistake of the scrivener and without the knowledge or consent of the Vreelands or of Welch the assumption clause was inserted in the deed; that Welch did not read or know the contents of the deed and that neither the Vreelands nor Welch had any knowledge of the assumption clause being in the deed until about January 1, 1917; that it was not the purpose or intent of the Vreelands to insert the assumption clause in the conveyance and that it was not the purpose or intent of Welch to accept a deed containing an assumption clause.

In the second cause of suit the plaintiff avers that Johnson commenced his suit against the Pacific Land Company, as the sole defendant, for the foreclosure of the note and mortgage and that on December 5, 1916,

the suit terminated in a stipulated and final decree against the land for the amount of the note; and that because of the rendition of that decree Johnson is estopped to prosecute the action at law against Welch.

The third cause of suit contains a recital of the prosecution of the foreclosure suit to a final decree and an allegation that when Johnson elected to prosecute the suit in foreclosure his act constituted an election of remedies and deprived him of the right subsequently to maintain the action at law.

The fourth cause of suit does no more than to assert that:

"The sole purpose and intent of the commencement and prosecution of such action at law is to enforce a personal liability on the said recitals in the deed against this plaintiff, and to avoid and nullify the force and effect of" Section 426, L. O. L.

The fifth cause of suit is to the effect that Johnson failed to issue an execution on the decree obtained in the foreclosure suit and that therefore he ought not to be allowed to prosecute the action at law until the mortgaged premises are first sold on execution.

Johnson demurred to the second, third, fourth and fifth causes of suit. The demurrer was sustained; and then Johnson filed his answer to the first cause of suit. No reply was filed by Welch.

Process was not served upon Katherine Vreeland or George Vreeland; nor did they appear in the suit except as witnesses for Welch. Johnson was the only person upon whom summons was served and he alone answered. This suit was tried upon the issues made by the first cause of suit and the answer filed by Johnson. The trial resulted in a decree striking out the provision concerning the assumption of the mortgage. Johnson appealed; but Welch did not appeal from the

order sustaining the demurrer to the second, third, fourth and fifth causes of suit.    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Huntington & Wilson* and *Mr. Ernest C. Smith,* with an oral argument by *Mr. Smith.*

For respondent there was a brief over the names of *Mr. W. A. Robbins* and *Mr. Charles A. Johns,* with an oral argument by *Mr. Robbins.*

HARRIS, J.—1. The appellant contends that the allegations in the first cause of suit do not comply with the rule that the complaint, in cases of this kind, should distinctly show what was the original agreement of the parties, and should point out with clearness and precision wherein there was a mistake, and should show that the mistake did not arise from the gross negligence of the plaintiff: *Lewis* v. *Lewis,* 5 Or. 170, 177. The complaint does distinctly show what was the original agreement and it also points out precisely wherein there was a mistake. A demurrer to the first cause of suit might have required the plaintiff to give a more specific explanation of his own conduct in order sufficiently to show that the mistake did not arise from his own gross negligence. There is not, however, a complete absence of allegations concerning the lack of negligence on the part of the plaintiff, and at the most the only criticism that can be made of the averments in the complaint is that it contains a defective statement of a good cause of suit; and consequently when the objection is for the first time urged on the hearing in this court "every reasonable inference should be given in favor of the complaint that can be drawn therefrom": *Hyland* v. *Hyland,* 19 Or. 51, 58 (23 Pac.

811, 814); *Osborn* v. *Ketchum,* 25 Or. 352, 357 (35 Pac. 972).

2. It is argued that by failing to reply the plaintiff admitted the appellant's claim. Following the words "this defendant admits and alleges" are affirmative statements which in form are new matter but in substance amount merely to denials; and hence a reply was not necessary: *Kabat* v. *Moore,* 48 Or. 191, 195 (85 Pac. 506); 31 Cyc. 244.

3. The plaintiff maintained an office in Portland. Katherine Vreeland, the daughter of plaintiff, and George Vreeland had been married in July, 1911, and we infer from the record that they lived in or near Hood River. Welch owned an "equity" in a tract of land in the Hood River valley. Soon after the Vreelands purchased the Johnson land they expressed a desire to secure the tract in which Welch owned an "equity"; and according to the testimony of Welch "they suggested they would like to turn in their equity in this place, and as she was my daughter I told her I would take that equity, the equity in the piece of property in the Hood River orchard lands for the piece they desired." In the language of George Vreeland, the parties "just switched equities." A. Welch, George Vreeland and Katherine Vreeland all testified in positive terms that they agreed to exchange equities and that there was no agreement that Welch should assume the payment of the note and mortgage held by Johnson. Welch and the Vreelands were the only persons who had actual knowledge of the terms of the agreement. No witnesses testified that Welch agreed to pay the note or to procure a release of the mortgage. The only evidence contradicting the story told by Welch and the Vreelands consists of alleged suspicious circumstances including the relationship between

Welch and the Vreelands, the assumption clause in the deed from Welch to the Pacific Land 'Company, and the like. It must be remembered that this is not a case where the grantee is asserting and the grantors are denying that there was a mistake; but here not only the grantee but also the grantors are unreservedly agreed that a mistake was made in the preparation of the deed. The fact that all the persons who knew about the terms of the agreement testified that there was a mistake made in the preparation of the deed, and there was no evidence to the contrary except a few suspicious circumstances, and the fact that the trial judge saw and heard the witnesses, and on that account was in a better position to pass upon the credibility of those witnesses, present a situation where the findings of the trial judge are peculiarly entitled to respect; and we therefore conclude that the findings of the trial judge concerning the fact of mistake should remain undisturbed: *Tucker* v. *Kirkpatrick,* 86 Or. 677, 679 (169 Pac. 117); *Rowe* v. *Freeman,* 89 Or. 428, 435 (172 Pac. 508, 174 Pac. 727).

4. The deed which the plaintiff seeks to have reformed was prepared in his office by his stenographer. Welch testified that when the Vreelands said that "they wanted the other place" he "told them all right. They said fix up the deed and send up to them." Continuing his testimony Welch stated, "I had my stenographer prepare a deed for an equity in a certain piece of property. It was sent up there and signed and put on record in Hood River County." When asked whether the clauses concerning the assumption of the mortgage were inserted in the deed by his authority or with his knowledge he answered: "They were not. They were inserted there by copying a deed."

Although Welch stated that he had no recollection of having seen the deed from the Ricords to Katherine Vreeland, nevertheless if the presence of the assumption clause in the deed to Welch is to be accounted for by saying that it was "inserted there by copying a deed," the reasonable inference is that the stenographer had the deed which the Ricords gave to Katherine Vreeland. At any rate the testimony of Welch is to the effect that the paper was prepared by his stenographer upon his instruction to "prepare a deed for an equity in a certain piece of property," and presumably the stenographer had in her possession and copied from the deed which the Ricords had made. After the paper had been prepared by the stenographer it was forwarded to the Vreelands at Hood River and they appeared before a notary public on November 7, 1912, and signed and acknowledged the instrument. George Vreeland caused the deed to be recorded on November 9, 1912, and at some subsequent time he returned it to Welch. On December 28, 1916, Welch received a letter from the attorney for Johnson, advising him that Johnson had obtained a decree against the Pacific Land Company "foreclosing the mortgage on the property [describing it] which together with the note you assumed and agreed to pay in the deed given to you by your daughter, * * on November 7, 1912," and saying also that "you are personally responsible for the payment of this claim in full" and "that Mr. Johnson looks to you for payment of this indebtedness." According to the testimony of Welch he did not know of the existence of the assumption provision in the deed prior to the receipt of that letter. George Vreeland did not know, when he signed the deed, that the document contained the assumption provision; and Katherine Vreeland said in substance

that she supposed that the deed merely transferred the equity. Welch did not ask for or receive an abstract of title.

It is not surprising that Welch did not ask for an abstract or that the Vreelands did not read or notice the assumption provision in the deed signed by them because in the language of George Vreeland "it was a family agreement." If, as the trial court expressly found, the assumption clause was inserted in the paper "by and through a mistake or oversight of the scrivener, and without the knowledge or consent of either the grantor or grantee," Welch is entitled to a reformation of the deed and Johnson cannot avail himself of the assumption clause: *Bradshaw* v. *Provident Trust Co.*, 81 Or. 55, 62 (158 Pac. 274); *Lloyd* v. *Lowe* (Colo.), 165 Pac. 609 (L. R. A. 1918A, 999); *Parchen* v. *Chessman*, 53 Mont. 430 (164 Pac. 531).

5. The appellant argues that Welch was negligent and on that account cannot ask for a reformation of the deed. It is true that, stated in broad terms, the rule is that equity will not relieve a person from his erroneous acts or omissions resulting from his own negligence (2 Pom. Eq. Juris. (3 ed.), § 839); and yet as pointed out by Professor Pomeroy in his legal classic it is not correct to say that a mistake resulting from the complaining party's own negligence will never be relieved, but—

"It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will

stay the hand of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby. In addition to the two foregoing requisites, it has been said that equity would never give any relief from a mistake, if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; nor unless the other party was under some obligation to disclose the facts known to himself, and concealed them. A moment's reflection will clearly show that these rules cannot possibly apply to all instances of mistake, and furnish the prerequisites for all species of relief. Their operation is, indeed, quite narrow; it is confined to the single relief of cancellation, and even then it is restricted to certain special kinds of agreements'': 2 Pom. Eq. Juris. (3 ed.), § 856.

The principle discussed by Professor Pomeroy was recognized and approved in *Howard* v. *Tettelbaum,* 61 Or. 144, 149 (120 Pac. 373), where it is said:

"Negligence, in order to bar equitable relief, in case of mutual mistake, clearly established, must be so gross and inexcusable as to amount to a positive violation of a legal duty on the part of the complaining party."

See, also: 34 Cyc. 949.

But, repeating the language of Professor Pomeroy, "each instance of negligence must depend to a great extent upon its own circumstances." To the same effect are: *Powell* v. *Heisler,* 16 Or. 412, 416 (19 Pac. 109); *Farwell* v. *Home Ins. Co.,* 136 Fed. 93, 98 (68 C. C. A. 557); *Shields* v. *Mongollon Exploration Co.,* 137 Fed. 539, 550 (70 C. C. A. 123). Nor is the failure of a complainant to read an instrument conclusive evi-

dence, as a matter of law, that the mistake was due to his negligence: *West* v. *Suda,* 69 Conn. 60, 62 (36 Atl. 1015); *Hitchins* v. *Pettingill,* 58 N. H. 3; *Bradshaw* v. *Provident Trust Co.,* 81 Or. 55, 59 (158 Pac. 274); *Lloyd* v. *Lowe* (Colo.), 165 Pac. 609, 610 (L. R. A. 1918A, 999); 6 Pom. Eq. Juris., § 680. See, also: *Albany City Savings Inst.* v. *Burdick,* 87 N. Y. 40; *Story* v. *Gammell,* 68 Neb. 709 (94 N. W. 982); *Taylor* v. *Glens Falls Ins. Co.,* 44 Fla. 273 (32 South. 887).

The record does not present any element of estoppel as between Johnson and Welch. If instead of being the mortgagee Johnson were an assignee of the mortgagee, and had purchased the mortgage after the delivery of the deed to Welch on the faith of the added security afforded by the assumption clause, or, if Johnson had changed his position to his disadvantage by reason of the assumption provision in the deed to Welch, quite a different case would confront us: *International Mortgage Bank* v. *Matthews,* 92 Wash. 180 (158 Pac. 991). Johnson paid nothing on account of the assumption clause; he neither did nor omitted to do any act on account of it; and, so far as he is concerned and for all practical purposes, any advantages reaped from it by him are gratuitous. We conclude from the circumstances disclosed by the record, and especially in view of the fact that the grantors and grantee named in the deed agree that there was a mistake as alleged by the complainant and in view of the further fact that there is no element of estoppel available to Johnson, that Welch was not guilty of such negligence as will prevent a reformation of the deed: *Stone* v. *Moody,* 41 Wash. 680 (84 Pac. 617, 85 Pac. 346, 5 L. R. A. (N. S.) 799).

6. The Vreelands had, by the assumption clause in the deed from the Ricords, obligated themselves to pay

the note and mortgage; and they were therefore vitally interested in any change that might be made in the deed to Welch: *Stover* v. *Tompkins,* 34 Neb. 465 (51 N. W. 1040).

The Vreelands were necessary parties and ought to have been served with summons and complaint so that any decree which might be rendered would bind them as well as Johnson and Welch. All the parties to a deed who are affected immediately or consequentially by a mistake should be made parties as they are entitled to be heard upon any matter that might affect their rights under the decree: *Center Creek Water & Irr. Co.* v. *Lindsay,* 21 Utah, 192 (60 Pac. 559); *First National Bank* v. *Fessler,* 84 N. J. Eq. 166 (92 Atl. 914); *Taylor* v. *Holmes* (C. C.), 14 Fed. 498, 514; *Cole* v. *Fickett,* 95 Me. 265, 269 (49 Atl. 1066); *Hellman* v. *Schneider,* 75 Ill. 422, 425; *De Groot* v. *Wright,* 9 N. J. Eq. 55, 58; *Oliver* v. *Clifton,* 59 Ark. 187, 190 (26 S. W. 817); *Bonvillain* v. *Bodenheimer,* 117 La. 794, 815 (42 South. 273).

The facts here are unlike the facts in *Beasley* v. *Shively,* 20 Or. 508 (26 Pac. 846), and hence we would not be justified here in dismissing the suit as was done there. Nor need we remand the cause with general directions or with special directions like those given in *Mangin* v. *Kellogg,* 22 Ida. 137 (124 Pac. 651, 653). Katherine Vreeland and George Vreeland appeared as witnesses for Welch and as such witnesses testified that Welch did not agree to assume the note and mortgage and that the assumption provision was inserted in the deed to Welch through a mistake. This testimony, given by the Vreelands, estops them from denying Welch's right to a reformation of the deed and dispenses with the necessity of remanding the cause: *Vial* v. *Norwich Fire Ins. Society,* 172 Ill. App. 134, 140;

affirmed in 257 Ill. 355 (100 N. E. 929, Ann. Cas. 1914A, 1141, 44 L. R. A. (N. S.) 317); *Gardner* v. *Kinney,* 60 Or. 292, 296 (117 Pac. 971). See, also: *De Vol* v. *Citizens' Bank,* 92 Or. 606 (181 Pac. 985).

The decree appealed from is affirmed.

AFFIRMED.

McBRIDE, C. J., and BURNETT and BEAN, JJ., concur.

---

Rehearing denied October 7, 1919.

PETITION FOR REHEARING.

(184 Pac. 280.)

On petition for rehearing. DENIED.

*Mr. Ernest C. Smith* and *Messrs. Huntington & Wilson,* for the petition.

*Mr. W. A. Robbins, contra.*

Department 1.

BURNETT, J.—In his petition for a rehearing the defendant urges upon us the consideration of three several features of the testimony here set down:

"1. That the respondent Welch, through his attorney Charles A. Johns, on December 29, 1916, at a time when his attention was directed to the clause in question and he was informed that the appellant would make the claim that he has made and does make in this suit, stated that 'there is no contention over the terms and conditions in the conveyance.'

"2. That the same attorney, Charles A. Johns, in April, 1916, in a written statement to this court in behalf of Welch corporation, the Pacific Land Company, said that Welch assumed and agreed to pay the mortgage in and by the terms of the deed.

"3. That the respondent, the plaintiff at the trial, produced evidence showing that the deed in question was prepared in the office of Charles A. Johns, attorney for Welch, at the time the deed was prepared."

· It will be recalled that the object of this suit was to correct an alleged mistake in a deed from the defendants Vreeland to the plaintiff Welch by striking out of the same the clause whereby Welch assumed and agreed to pay the note and mortgage held by Johnson as a lien upon the land conveyed, on the ground that it was inserted in the conveyance by the mutual mistake of the parties thereto. The testimony involved in the first specification of the petition is substantially as follows: Having foreclosed his mortgage, the attorney for the defendant Johnson, who was plaintiff in that proceeding, addressed a letter to the present plaintiff Welch at Portland, Oregon, directing his attention to the decree of foreclosure, notifying him that under the conveyance mentioned Welch was responsible for the payment of the debt evidenced by the note and secured by the mortgage, and calling upon him to pay it in full. This letter, dated December 28, 1916, was introduced in evidence. The defendant Johnson also read in evidence here a letter from Charles A. Johns, under date of December 29, 1916, addressed to the attorney for Johnson, which reads thus:

"Mr. Welch has handed me your letter to him of December 28, in which I note you claim he assumed and agreed to pay the Johnson note and mortgage, and that you are directed by Mr. Johnson to take such steps as may be necessary to collect his claim.

"There is no contention over the terms and conditions in the conveyance to Mr. Welch, but for many and different reasons he disclaims any personal liability to Johnson. Among other things, as I understand

the facts, the note and mortgage from Ricord to Johnson was a purchase money note and mortgage. At all events, there is no disposition on the part of Mr. Welch to pay this claim or any part of it, and I think after a careful investigation you will find he is not personally liable."

7. In this suit Johnson contends that this letter constitutes an admission binding upon Welch, to the effect that there is no mistake in the conveyance. If this construction is correct it would be fatal to the plaintiff's suit. In *Fleishman* v. *Meyer,* 46 Or. 267, 274 (80 Pac. 209), this court had under consideration the correspondence between the defendants and a firm of attorneys who seemed to be representing the plaintiffs in advance of any litigation between them, in the matter of an alleged breach by defendants of their contract to sell personal property to the plaintiffs. Want of a pending action is a condition attending the correspondence here in question. In that case the court said, speaking by Mr. Justice Moore:

"Authority to compromise the claim, as mentioned in the exceptions noted, will be implied only in the regular course of pending suits and actions, when an attorney has neither time nor opportunity to consult with his client, whose interest would be imperiled by delay. [Citing authorities.] The weight of authority in this country supports the rule that an attorney, by virtue of a mere retainer, has no implied power to bind his client by a compromise of his claim." [Citing still other precedents.]

If an attorney in advance of litigation cannot compromise his client's case, much less can he admit away the client's whole case.

There is nothing in the evidence for the defendant relating to the extent of the authority given to Johns to bind the plaintiff Welch by the letter in question.

On the other hand, as a witness for the plaintiff in rebuttal, Johns stated:

"That letter was written without a consultation with Mr. Welch or any knowledge of the facts concerning the execution of these deeds."

In the absence of any pending litigation in which Johns was appearing as the attorney of record for Welch, no more importance can be attached to the letter than to the declaration of anyone else who assumes to speak for another. The case is not affected by the fact that the writer was a member of the Bar. He might as well have been the plaintiff's grocer or laundryman. It would be necessary to show that the declarations in the letter were authorized by the plaintiff and within the scope of the authority conferred upon the writer, before the writing could bind the plaintiff. How far an attorney may bind his client in compromise or renunciation of his claim, is discussed in *Pomery* v. *Prescott,* 106 Me. 401 (76 Atl. 898, 138 Am. St. Rep. 347, 21 Ann. Cas. 574, and note).

8. Much is claimed, also, for a statement made in the brief of the defendant in the case of *John R. Johnson, Plaintiff,* v. *Pacific Land Company, Defendant,* heard in this court at the March term, 1917, to the effect that the plaintiff there had sold the land here in question to Ricord, who conveyed to the Vreelands, and the latter to Welch, and that in each instance the grantees assumed and agreed to pay the mortgage. This brief was over the name of Charles A. Johns and Claude M. Johns. The action there was for the replevin of some personal property alleged to have been wrongfully removed from the mortgaged premises by the defendant there. We note that it was an incidental statement made in the brief by way of opening the argument for the defendant in that case. It was

*res inter alios actos.*  It is not shown even that Welch was present at the argument of the case or knew that the statement was included in the brief.  At the utmost, it could bind only the parties to that litigation.

Much the same is the case of *Patty* v. *Salem Flouring Mills Co.,* 53 Or. 350 (96 Pac. 1106, 98 Pac. 521, 100 Pac. 298).  One question there involved was the custom of the defendant in dealing with farmers when it received wheat from them and issued receipts therefor. In the Patty case the trial court admitted evidence of the testimony of a witness in the previous case of Savage against the same defendant respecting such a custom.  The court in an exhaustive opinion by Mr. Justice MOORE held that this was error.  That case is controlling upon the second specification in the defendant's petition here.

9–11. Even if the deed in question was prepared in the office of the plaintiff's attorney, and this is questionable under the testimony, that would not necessarily make it less a mistake to include the clause in dispute.  Even attorneys are not infallible and their errors are not necessarily conclusive upon their clients. This circumstance is properly considered on the point that to be relieved from a mistake it must appear that it was not due to the party's negligence, but, as pointed out in the former opinion, on the authority of Pomeroy, the negligence which will prevent the relief of a party from his mistake must be such as will amount to a violation of a positive duty owed to another party. Here, at the time the alleged mistake was made Johnson had already received his note and mortgage, together with the agreement of the Vreelands as grantees subsequent to Johnson to pay this same debt.  In taking the conveyance from the Vreelands, Welch owed no duty whatever to Johnson.  The latter was not in-

duced to surrender any right or to prejudice his situation by anything in the deed which Welch accepted. The negligence, therefore, whether of himself or of his attorney who wrote the deed, if he did write it, is not such as will prevent the correction of the mistake.

Summing up the whole matter of the evidence, we have the consensus of statement of the parties to the conveyance that it was a mistake to include such a clause and that it was not part of the agreement out of which the deed arose. All that is opposed to this positive statement are the inferences to be drawn from the correspondence alluded to and the possible fact that the deed was drawn in the office of a member of the Bar. As a matter of law, the letter mentioned was not binding upon the plaintiff here and the inferences to be drawn from the circumstances under which the conveyance was written are not of sufficient weight to overcome the direct, uncontradicted and explicit narrative of the parties.

The petition for rehearing is denied.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.

Mr. Justice JOHNS did not participate in the consideration of the original case or of the petition for rehearing.